[No. F018748. Fifth Dist. Nov. 24, 1993.]

GLEN DEWAYNE McNABB, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 1(B) and 2.

## COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Assistant Attorney General, and Martin H. Milas, Deputy Attorney General, for Defendant and Appellant.

Michael E. Dellostritto for Plaintiff and Respondent.

## OPINION

ARDAIZ, J.—The Department of Motor Vehicles (DMV), pursuant to Vehicle Code section 13353.2, issued an order suspending the driver's license of Glen McNabb on the grounds that he had driven with a blood-alcohol concentration greater than .08 percent.[1] McNabb challenged the order at a DMV administrative hearing. The hearing officer determined that the evidence supported the order and upheld the suspension. McNabb there-after petitioned the superior court for a writ of mandate directing the DMV to set aside its order. The writ was granted, and DMV appeals. We will reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

At the administrative hearing, the hearing officer received into evidence several documents, including the following:

1. The sworn statement of California Highway Patrol Officer R. D. Reece, dated September 13, 1991, which stated the following: McNabb was arrested on September 13, 1991, at 11:40 p.m. The section of the report labeled "PROBABLE CAUSE FOR STOP OR CONTACT" states, "PER WITNESSES THIS SUBJ. DROVE UP TO TWO PARKED CARS THAT WERE CLOSE TO HIS DRIVEWAY. HE PUT HIS TRUCK AGAINST[ ] FIRST ONE, THEN THE OTHER,

---

[1]Vehicle Code section 13353.2 provides, in pertinent part, "(a) The department shall immediately suspend the privilege of any person to operate a motor vehicle if the person was driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood."

All further statutory references are to the Vehicle Code unless otherwise indicated.

AND PUSHED THESE VEHICLES AWAY FROM HIS DRIVEWAY." Officer Reece observed that McNabb displayed "Bloodshot/watery eyes[,] . . . Odor of alcoholic beverage[,] . . . Unsteady gait [and] . . . Slurred speech[.]" McNabb "submitted to and completed a chemical test(s) of: . . . Blood . . . ."

2. The "SUPPLEMENT TO OFFICER'S STATEMENT [-] BLOOD/URINE TEST RESULTS," signed by Officer Reece, indicating that McNabb was the driver, the date of arrest was September 13, 1991, the "TIME OF TEST" was 12:33 a.m. and that the "TEST REQUESTED" was a blood test.

3. The "KERN COUNTY REGIONAL CRIMINALISTICS LABORATORY REPORT OF BLOOD/URINE ALCOHOL ANALYSIS," signed under penalty of perjury by "ANALYST" Petra Imhoff, which indicated the following: McNabb was the "SUBJECT"; the "CASE DATE" was September 13, 1991; the "BLOOD ALCOHOL RESULT %" was "0.17" and the "KIT NO." was "BLOOD 911143."

At the hearing, Officer Reece testified to the following: on September 13, 1991, he and his partner received "a call of an accident . . . ." When the officers arrived at the scene at 11:25 p.m., "[I]t was a big mess . . . . There were a lot of drunk people running around . . . ." The officers saw "two cars sitting in the street and both had accident damage to them and . . . Mr. McNabb's pickup, sitting in his driveway. A couple of witnesses came over and told us that [McNabb] had bumped into a couple of cars and then parked in the driveway." The witnesses told the officers that the "accident" occurred at 11:05 p.m. Officer Reece felt the hood of the pickup and it felt warm.

Officer Reece observed McNabb who, it was "obvious[,] . . . was highly intoxicated and stumbling around." McNabb told the officer that he had not been driving the pickup. McNabb also told the officer that he had consumed "three beers . . . earlier, at home." He also told the officer "he heard something outside and came out to see what was going on." Officer Reece placed McNabb under arrest.

The hearing officer upheld the suspension of McNabb's driver's license. In the "NOTICE OF FINDINGS AND DECISION" the hearing officer stated, "1. The officer . . . did . . . have reasonable cause to believe that [McNabb] had been driving or was [in] actual physical control of a motor vehicle in violation of Section 23152 or 23153 of the Vehicle Code. [¶] 2. [McNabb] . . . was . . . lawfully arrested. [¶] 3. [McNabb] . . . was . . . driving a motor vehicle when he[ ] . . . had .08% or more, by weight, of alcohol in his[ ] . . . blood."

In its "RULING ON PETITION FOR WRIT OF MANDATE" ("ruling") the court noted that McNabb argued, "[T]here is not sufficient competent evidence to

support the findings and decision of the Hearing Officer. In this regard, McNabb contends that the officer did not have reasonable cause to believe that [McNabb] had been driving a vehicle in violation of Vehicle Code section 23152 or 23153." The court stated, "As required the Court has independently reviewed the administrative record to determine whether these findings are or are not supported by substantial evidence and finds that they are."

The court next stated, "Petitioner next contends that the arrest was not lawful, because the crime was not committed in the immediate presence of the arresting officer. [The DMV] contends that it was lawful, under the authority of Vehicle Code section 40300.5, which permits an arrest of a person who is involved in a traffic accident . . . when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage." The court ruled, "[T]he. act that gave rise to the arrest was not an accident but an intentional act. [¶] The Court therefore finds that the administrative hearing officer committed an error which leads the Court to grant the Petition. [¶] Because of the ruling on this issue, the Court finds that the others raised are moot and will not discuss or rule on them." In the judgment itself, the court stated, "[T]he administrative hearing officer committed an error in finding that [McNabb] was lawfully arrested."

### DISCUSSION

### 1. *Lawfullness of the Arrest*

#### A. *Was McNabb Involved in a Traffic Accident Within the Meaning of Section 40300.5?*

■ "When the DMV initiates an action to suspend or revoke a driver's license the burden of proving the facts necessary to support the action is on the DMV." (*Carlton* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428, 1432 [250 Cal.Rptr. 809].) Thus, DMV must prove that the licensee was lawfully arrested. (§§ 13557, subd. (b)(2), 13558, subd. (c)(2).) Section 40300.5 provides an exception to the rule, stated in Penal Code section 836, that in order for an officer to make a lawful arrest without a warrant, the offense must be committed in the officer's presence; section 40300.5 states: "Notwithstanding any other provision of law, a peace officer may, without a warrant, arrest a person who is (1) *involved in a traffic accident* or (2) observed by the peace officer in or about a vehicle which is obstructing a roadway, when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any

drug, or under the combined influence of an alcoholic beverage and any drug." (Italic added.)

 DMV argues that the court erred in concluding that McNabb was not "involved in a traffic accident" within the meaning of section 40300.5 and that therefore the court also erred in concluding that McNabb was not lawfully arrested. The parties do not dispute that McNabb intentionally drove his car into two vehicles and pushed them away from his driveway. Under these circumstances, the applicable standard of review is as follows: "In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. This limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. [Citation.] [¶] . . . Statutory construction is a question of law for the courts . . . ." (*Rodriguez* v. *Solis* (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].) Therefore, the question before us is: whether an intentional act such as that committed by McNabb in the instant case is a traffic accident within the meaning of section 40300.5.

We are guided by certain basic principles of appellate review. "Our role as an appellate court is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute." (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].) Since no definition of accident appears in the Vehicle Code, we "must look to the language of the statute and 'accord words their usual, ordinary, and common sense meaning based on the language used and the evident purpose for which the statute was adopted.' [Citations.] In doing so, we must 'presume that the Legislature did not intend absurd results.' [Citation.] Accordingly, if a statute is susceptible to more than one interpretation, we must adopt the reasonable meaning and reject that which would lead to an unjust and absurd result." (*Ibid.*)

 The word "accident" has at least two mutually exclusive usual, ordinary meanings. On the one hand, as McNabb points out, in *Cowman* v. *Department of Motor Vehicles* (1978) 86 Cal.App.3d 851, 853 [150 Cal.Rptr. 559] the court stated, "An accident is an unexpected happening, a mishap, an unfortunate occurrence (Webster's New World Dict. of the American Language); an unexpected and undesirable event, anything that occurs unexpectedly or unintentionally (American Heritage Dict. of the English Language) (1976); an unexpected event (Concise Oxford Dict.); an unusual event happening without foresight or expectation (Compact Ed. of the Oxford

English Dict.); an unforeseen unplanned event, one occurring by chance, lacking intention (Webster's Third New Internat. Dict.) . . . ." This court utilized definitions such as these in *Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41 [261 Cal.Rptr. 273] in addressing the question of whether an insured's intentional act gave rise to coverage under a homeowner's policy which provided coverage for damages caused by an "accident." There we stated, "An accident[ ] . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Id.* at p. 50.)[2]

Under another ordinary meaning of the word, however, "accident" does not preclude a deliberate act if the act is unexpected from the perspective of the person acted upon. Thus, Black's Law Dictionary (6th ed. 1990) page 15 states: "In its most common accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning: a fortuitous circumstance, event, or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances *is unusual and unexpected by the person to whom it happens* . . . ." (Italics added.)

The court in *People* v. *Laursen* (1985) 175 Cal.App.3d Supp. 1 [222 Cal.Rptr. 122] utilized this definition in construing section 20002, subdivision (a), which imposes certain duties on "The driver of any vehicle involved in an accident resulting in damage to any property . . . ." There, the appellant intentionally backed into one vehicle and then accelerated forward, intentionally striking another vehicle before driving off in an effort to escape from the owners of the vehicles. The court rejected the appellant's argument that his actions did not constitute an accident within the meaning of section 20002, subdivision (a). The court endorsed the reasoning of an Oregon case which interpreted a similar statute. In that case, after quoting the definition from Black's Law Dictionary set forth above, the court stated, " 'This sense of the word harmonizes well the purpose of enacting the statute which was to establish a comprehensive body of law covering all aspects of traffic on Oregon highways. . . . From this all-encompassing perspective, it seems logical that the [L]egislature would intend to use the broadest sense of the word "accident"; *one which includes intentional as well as unintentional*

---

[2]We noted that *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199 [208 Cal.Rptr. 5], cited the following definition: " 'In its plain and ordinary sense, "accidental" means "arising from extrinsic causes[; 1] occurring unexpectedly or by chance[; or] happening without intent or through carelessness." (Webster's Ninth New Collegiate Dict. (1983) p. 49.)' " (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 48.) We also stated, "The court in *Royal Globe Ins. Co.* v. *Whitaker* [(1986)] 181 Cal.App.3d 532[, 537] [226 Cal.Rptr. 435] . . . concluded: 'An intentional act is not an "accident" within the plain meaning of the word.' " (*Id.* at p. 48, fn. 3.)

*conduct.* To interpret "accident" so as to include only unintentional conduct would exclude some of the situations for which the law was enacted.' " (175 Cal.App.3d at p. Supp. 6, italics added.)

■ Similarly, interpreting "accident" so as to include events resulting from intentional acts which are unexpected by the person to whom the act happens harmonizes well with the purpose of section 40300.5. "The obvious intent of the Legislature in enacting section 40300.5 was to eliminate in misdemeanor drunk driving cases the troublesome requirement that a police officer can make an arrest only if he has reasonable cause to believe . . . the person to be arrested had committed the offense *in his presence.*" (*People v. Ashley* (1971) 17 Cal.App.3d 1122, 1126 [95 Cal.Rptr. 509], italics in original, fn. omitted.) The determination of whether there was reasonable cause to believe a driver who has been involved in a "traffic accident" was driving under the influence of an alcoholic beverage is not affected by whether the driver's act leading to the accident was intentional or whether the driver was simply negligent. In light of the purpose of the statute, the Legislature would have no reason to treat traffic accidents resulting from volitional, intended and purposeful acts differently than those resulting from unintentional or negligent conduct. Indeed, such a distinction would be absurd. We conclude, therefore, that the term "accident" in section 40300.5 includes acts such as McNabb's volitional act in the instant case. Therefore, the trial court erred in ruling that the act of intentionally driving a vehicle so as to push aside two other vehicles did not constitute a "traffic accident" within the meaning of section 40300.5.

Our conclusion is not inconsistent with the well-established rule that "An accident, [as that term is used in insurance policies,] . . . is never present when the insured performs a deliberate act . . . ."[3] (*Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50.) Whereas in the instant case we interpret a statute, *Mendez* and other cases involving insurance coverage interpret contracts. Therefore, the following rule of construction applies: " ' "[I]f semantically permissible, the contract will be given such construction as will fairly achieve its object of providing . . . [reasonable expectation of coverage] for the loss to which the insurance relates." ' " (*Id.* at p. 47.) No insured can maintain a reasonable expectation of coverage for his deliberate damage-causing acts. Accordingly, courts do not consider the perspective of the person who suffers damages as a result of the insured's deliberate act. As demonstrated above, the interpretation of section 40300.5 requires a different analysis.

---

[3]As noted above, this statement is subject to an exception, i.e., an accident occurs even though the insured's act was intentional where "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." (*Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50.) This exception is not applicable in the instant case.

B. *Other Issues Involving Lawfulness of the Arrest.\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Necessity for Remand\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed and, for reasons set forth in the unpublished portion of this opinion, remanded for proceedings consistent with the views expressed in this opinion.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

---

*See footnote, *ante*, page 832.