[No. H012143. Sixth Dist. Mar. 24, 1995.]

KENNETH L. CAMPBELL, Plaintiff and Appellant, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, IV, and V of the Discussion.

**COUNSEL**

Kenneth L. Campbell, in pro. per., for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Jose R. Guerrero and Robert R. Buell, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

### MIHARA, J.—

#### Introduction

Kenneth Campbell appeals from a judgment denying a petition for mandamus following the Department of Motor Vehicle's suspension of his driving license for failure to comply with the financial responsibility laws. We affirm.

#### Facts

On December 29, 1992, while driving an automobile owned by his mother, Lee Campbell, appellant was involved in a traffic accident with a car owned and operated by Teawood Kung. The accident occurred in the parking lot of the apartment complex where appellant resided.

On January 9, 1993, Kung prepared and signed a "Report of Traffic Accident" (Department of Motor Vehicles form SR 1A) notifying the Department of Motor Vehicles (DMV) of the accident, providing information concerning his insurance coverage, and estimating the cost of repairs to his vehicle to be $550.[1] Kung stated that the accident did not result in any injuries.

Lee Campbell signed a similar report on February 17, 1993, wherein she estimated the cost of repairs to her vehicle to be $1,200 and asserted that Kung's car suffered only $100 in damages. Campbell admitted that her car was not insured at the time of the accident. As had Kung, Campbell reported no injuries resulting from the collision.

On March 12, 1993, the DMV sent appellant notice of its intent to suspend his driving privilege for failure to comply with the financial responsibility laws. (See Veh. Code,[2] § 16070.) Following appellant's timely request, the suspension was stayed pending an administrative hearing. (§ 16075, subd. (b).)

---

[1]Vehicle Code section 16000, subdivision (a), requires the filing of such a report within 10 days after the accident.

[2]All unspecified section references are to the Vehicle Code.

At the administrative hearing conducted on June 9, 1993, appellant submitted a written demurrer to the order of suspension in which he contested the jurisdiction of the DMV on the ground that the accident had occurred on private property. In the demurrer, appellant admitted that on the date in question, he was operating a motor vehicle and was involved in a collision with a second vehicle driven by Teawood Kung.

During questioning by the hearing officer, appellant reiterated that he was the driver of the vehicle involved in the accident and also conceded that he did not have any "financial responsibility insurance in effect" at the time of the incident. Appellant testified that the cost of repairs to his mother's vehicle was between $1,000 and $1,200, and introduced a copy of a check in the amount of $618.47 issued to him by Kung's insurance company as payment for the damages. The hearing officer introduced into evidence as a departmental exhibit a repair estimate of $542.66 for Kung's vehicle. Additional estimates of $684.40 and $699.49 were also submitted.[3]

It was uncontroverted that there were no deaths or injuries resulting from the accident. The only contested issue at the hearing was whether the accident, having occurred on private property, fell within the scope of the financial responsibility laws.

Following the hearing, the DMV issued a decision suspending appellant's license for a one-year period effective June 13, 1993.[4] The decision was based on the hearing officer's findings that (1) appellant was the driver or owner of a vehicle involved in an accident on December 29, 1992;[5] (2) the accident resulted in property damage over $500; and (3) appellant had not established that financial responsibility covered the driver of the vehicle involved in the accident. On July 30, 1993, the decision was sustained upon departmental review. (§ 14105.5.)

Thereafter appellant filed a petition seeking a peremptory writ of mandate directing the DMV to set aside its order of suspension. On December 17, 1993, the superior court heard the matter and issued an order sustaining the suspension. Appellant appealed from the order on January 18, 1994. A formal judgment denying the writ of mandate was entered on February 14, 1994.

---

[3] At oral argument, we granted appellant's request to augment the record on appeal to include these additional repair estimates. (Evid. Code, § 459.)

[4] The suspension order permits appellant restricted driving privileges for work purposes upon payment of a penalty fee and proof of financial responsibility.

[5] The notice states that the accident occurred on December 29, 1993. Based on the record on appeal, however, it is clear that the accident actually occurred the previous year, on December 29, 1992. Appellant does not argue otherwise.

*Discussion*

I.  *Premature Filing of the Notice of Appeal\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

II.  *Standard of Review*

■ "When an administrative agency initiates an action to suspend or revoke a [driver's] license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations or otherwise respond. [Citations.]" (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313].)

Since the retention of a driver's license constitutes a fundamental vested right, the trial court must exercise its independent judgment to determine whether the weight of the evidence supported the administrative decision reached by the DMV. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 394-397 [188 Cal.Rptr. 891, 657 P.2d 383].)

■ " 'In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence.' " (*McNabb* v. *Department of Motor Vehicles* (1993) 20 Cal.App.4th 832, 837 [24 Cal.Rptr.2d 641], quoting *Rodriguez* v. *Solis* (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].) This limitation, however, is inapplicable to the construction of a statute, an issue which constitutes a question of law. (20 Cal.App.4th at p. 837.) "In such cases . . . the appellate court is not bound by the trial court's decision, but may make its own determination." (*Ibid.*)

III.  *Was Appellant Involved in a Reportable Traffic Accident Within the Meaning of Sections 16000 and 16000.1?*

In one form or another, California has required its drivers to be financially responsible for driving-related injuries since 1929. (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1220 [240 Cal.Rptr. 829, 743 P.2d 889].) Generally, this obligation is satisfied by means of insurance. (*Ibid.*) Until 1990, only those accidents which occurred on a public street or highway qualified as a "reportable accident" triggering a driver's duty to establish compliance with

---

\*See footnote, *ante*, page 489.

the state's financial responsibility laws. (See former § 16000; Stats. 1984, ch. 1324, § 2, p. 4556.) Effective in 1989, however, the Legislature amended section 16000 and added section 16000.1 to the Vehicle Code for the express purpose of expanding the financial responsibility laws to include specified "off-highway accidents."

Findings and declarations accompanying the legislation explain the public policy considerations supporting these measures: "The Legislature finds and declares as follows: [¶] (a) The current provisions of the Financial Responsibility Laws inadvertently do not permit the Department of Motor Vehicles to exercise its authority to suspend the driving privilege of an uninsured motorist who inflicts bodily injury or death upon individuals or who damages vehicles, buildings, or other property located on public and private property off the streets and highways. The Legislature further finds and declares that untold numbers of Californians are victims involved in these accidents. [¶] (b) It is the intent of the Legislature in amending the Financial Responsibility Laws to strengthen enforcement actions against uninsured motorists and to provide additional remedies for the victims of uninsured motorist accidents occurring off the streets and highways as soon as the department can reasonably implement the changes in Section 16000 of the Vehicle Code made by this act." (Stats. 1989, ch. 808, § 1, p. 2674.)

Section 16000, subdivision (a)[6] now defines a motorist's reporting duty as follows: "The driver of every motor vehicle who is in any manner involved in an accident originating from the operation of a motor vehicle on any street or highway or any reportable off-highway accident defined in Section 16000.1 . . . shall, within 10 days after the accident, report the accident" on a form approved by the DMV.

Section 16000.1(a) defines a "reportable off-highway accident" as one which: (1) occurs off the street or highway; (2) involves a vehicle subject to registration under the Vehicle Code; and (3) results in damage to the property of any one person in excess of $500 or in bodily injury or death.

Section 16000.1(b) excludes from the financial responsibility laws any accident which "occurs off-highway in which damage occurs only to the property of the driver or owner of the motor vehicle and no bodily injury or death of a person occurs."

In the instant case, appellant contends that the accident which is the subject of this action does not qualify as a "reportable off-highway accident," as that term is defined in section 16000.1(b), because the accident did

---

[6]The word "subdivision" shall be deleted from all further statutory references.

not involve physical injury or death. Stated another way, he contends that off-highway accidents which involve only property damage are not reportable.

In contrast, the trial court found, and the DMV agrees, that the accident was reportable because the exclusion contained in section 16000.1 applies only where the accident does not involve personal injury or death and where all of the property damage is sustained by the driver or owner whose compliance with the financial responsibility laws is in question.

Though we concur with the trial court's ultimate conclusion that appellant's accident qualified as a reportable off-highway accident under section 16000.1, the exclusionary provision is not reasonably susceptible to either of the foregoing interpretations.

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) A statute must be construed so as to avoid an unjust and absurd result. (*McNabb* v. *Department of Motor, supra,* 20 Cal.App.4th 832, 837.)

■ Appellant's construction of section 16000.1(b) would exclude from coverage all off-highway accidents involving only property damage. This construction is unsupportable. First, such an interpretation would render as mere surplusage that portion of section 16000.1(a)(3) defining a reportable off-highway accident as one which results in property damage exceeding $500. Had the Legislature intended to exclude from the reporting requirements *all* off-highway accidents involving only property damage, it would not have included property damage as a component of the general definition of a reportable off-highway accident.

Second, the legislative declaration of findings and purpose demonstrates an explicit intent to broaden the scope of the financial responsibility laws to

include off-highway accidents resulting in damage to *"vehicles*, buildings, *or other property* located on public and private property off the streets and highways." (Stats. 1989, ch. 808, § 1, p. 2675, italics added.) Appellant's construction would completely frustrate this objective.

Read in context with section 16000.1(a)(3), and in light of the purpose of section 16000.1, the exclusionary provision must be construed as providing a narrow exception which may be invoked only when an otherwise reportable off-highway accident results in property damage of a limited and specific nature.[7] Though the parameters of this exception are difficult to ascertain due to the ambiguous language of section 16000.1(b), we believe that the exception was intended to apply only where there is a single-car accident in which all of the damage occurs to the property of the driver or owner of the single vehicle involved. We find support for our construction in the language of the relevant statutes, public policy considerations, and the consequences which would flow from an interpretation permitting the exclusion of off-highway accidents involving multiple vehicles.

First, were we to adopt a construction permitting application of the exception to multiple-car accidents, it is conceivable that the reportability of an accident might vary depending upon the perspective of each driver involved. In such cases, it is possible that the exception could act as a shield insulating the conduct of the uninsured motorist by permitting him to escape the reporting requirements and avoid suspension.[8] Such a scenario would contravene both the language of the pertinent statutes and the legislative intent to deter uninsured motorists and protect the state's drivers from suffering uncompensated damages. Our limited construction of section 16000.1(b), on the other hand, is entirely consistent with the statutory language and the legislative purpose in that it ensures application of the exclusion only where there can be no question that the uninsured motorist has not harmed anyone else as a result of his unlawful conduct.

Examining section 16000(a), we see that the reporting duty is framed in language which indicates that the duty to report is not dependent upon a

---

[7]The parties effectively concede that an accident resulting in bodily injury or death will not fall within the exception. Our discussion thus focuses only on the construction of the property damage exception specified in section 16000.1(b).

[8]Consider the following scenario: Driver A is uninsured and sustains property damage to his vehicle exceeding $500; Driver B is insured and sustains no property damage. Since Driver A's vehicle sustained all of the damage, it is conceivable that he could avoid the reporting requirements specified in section 16000 and escape suspension since the "damage occur[red] only to the property of the driver or owner of the motor vehicle." (§ 16000.1(b).) At the same time, Driver B would conceivably be required to file a report and show proof of insurance.

particular driver's perspective but is conditioned upon the occurrence of a triggering event, i.e., a reportable accident, as that term is defined in sections 16000(a) and 16000.1(a). When such an accident occurs, the statute imposes a duty to report upon "[t]he driver of *every* motor vehicle who is *in any manner involved*" in such an accident.

A comparison of the general definitions of reportable accidents found in sections 16000(a) and 16000.1(a)(3) with the language describing the exclusionary provision of section 16000.1(b) lends further support to our interpretation.

The Legislature painted with a broad brush when it set forth the elements of a reportable accident. The language of sections 16000(a) and 16000.1(a)(3) encompasses the possibility of multiple vehicles, and multiple instances of injury, death or significant property damage. Thus, any accident—whether it occurs on public or private property—is reportable whenever it results in significant "damage to the property of *any one person . . . or* in bodily injury or in the death of *any* person . . . ." (§§ 16000(a); 16000.1(a)(3).) In contrast, the exception delineated in section 16000.1(b) speaks narrowly of "*the* property of *the* driver or owner of *the* motor vehicle," language which conveys the involvement of a single vehicle, a single driver, and a single instance of property damage to the owner or driver of that vehicle.

■ Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning. (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 507 [247 Cal.Rptr. 362, 754 P.2d 708].) ■ In the instant case, the restrictive terminology of section 16000.1(b) compared with the expansive language used in the related provisions of sections 16000(a) and 16000.1(a)(3) supports our conclusion that the Legislature intended the exception to apply only in limited circumstances we have described.

For the foregoing reasons, we hold that the exception in section 16000.1(b) may be invoked only when a single car is involved in an accident and that accident results in property damage to no one but the driver or owner of that vehicle.[9]

---

[9]We are aware that the government vehicle exception in section 16000(b) contains language similar to that found in section 16000.1(b). That provision exempts from the reporting requirements vehicles owned, leased, or under the direction of federal, state or local

## IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is affirmed.

Cottle, P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied April 19, 1995, and appellant's petition for review by the Supreme Court was denied June 1, 1995.

---

governments and provides: "A report is not required pursuant to subdivision (a) if the motor vehicle involved in the accident was owned or leased by, or under the direction of, the United States, this state, another state, or a local agency." This provision could result in a situation where one driver is statutorily obligated to comply with the reporting requirements while a government driver involved in the accident is exempted. However, section 16000(b) is sui generis. Obviously, the statutory purpose of ensuring financial responsibility for driving-related injuries or property damage is not at issue where the full force and power of a government agency stands behind the vehicle in question. Accordingly, the government exclusion outlined in section 16000(b) does not undermine our construction of section 16000.1(b).

*See footnote, *ante*, page 489.