[No. F023828. Fifth Dist. Apr. 30, 1996.]

SELMA AUTO MALL II, Petitioner, v.
THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT OF
FRESNO COUNTY, Respondent;
RALPH KAZARIAN, JR., et al., Real Parties in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts 1 and 2 of the Discussion.

1674

## COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, Marshall C. Whitney and Stephen E. Carroll for Petitioner.

No appearance for Respondent.

Dietrich, Glasrud & Jones, Donald H. Glasrud, Timothy J. Buchanan, Alice H. Choi and Christopher P. Swenson for Real Parties in Interest.

## OPINION

**THAXTER, J.**—In the published portion of this opinion we decide that ordering an appellant, as a condition to staying enforcement of a writ of possession pending appeal, to guarantee payment of attorney fees awarded against other, nonappealing parties is an abuse of discretion. In the unpublished portion we conclude that the appellate department of respondent Fresno County Superior Court acted in excess of jurisdiction when it purported to make postremittitur orders concerning an appeal bond. Jurisdiction lies solely in the trial court. We will grant appropriate writ relief.

### FACTS AND PROCEDURAL HISTORY

Real parties in interest Ralph Kazarian, Jr., Donald M. Serimian, Lionel M. Serimian, Daniel L. Serimian, David M. Serimian, Marlon D. Serimian, and Leslie A. Morgan (collectively, landlords) own commercial premises in Selma, California. In 1984, they entered into a 10-year lease with Beckhaus Enterprises, Inc. (Beckhaus), which operated Selma Honda on the leased premises. In 1986, James R. and Judy Williams (Williams) purchased Beckhaus. Williams subsequently formed NJB Wheels West, Inc. (NJB) and owned 100 percent of its stock. Williams then transferred their shares of Beckhaus to NJB, so NJB owned 100 percent of the Beckhaus stock.

In 1991, Selma Honda was experiencing severe financial problems. Accordingly, in October 1991, Beckhaus, NJB and Williams signed a new 20-year lease agreement with landlords which provided for a more favorable

rental return to landlords in consideration for a cash infusion to the lessees from the landlords when the lease was signed. In November 1991, Williams and Dwight Nelson formed Selma Auto Mall II (SAM II or petitioner). A few months later, Williams and Nelson formed Selma Auto Mall III (SAM III). Beckhaus sold its Selma Honda assets to SAM III. In May 1992, SAM III moved the Honda dealership franchise to a nearby Chevrolet dealership and SAM II began operating Selma Toyota on the leased premises. At that time, Beckhaus, NJB, SAM II, and SAM III were all owned by Williams and Nelson. When Beckhaus belatedly requested landlords' consent to sublease the premises to SAM II under the terms of the 1984 lease, landlords refused, contending that lease was superseded by the 1991 lease and the tenants had breached the 1991 lease in a number of regards.

In March 1993, landlords filed an unlawful detainer complaint against Beckhaus, NJB, Williams, SAM II, and others. After a 20-day trial, the justice court found the 1991 lease agreement was valid and binding on Beckhaus, NJB, and Williams. The court also found that those parties had materially breached the lease, therefore, landlords did not unreasonably withhold consent to sublet to SAM II. SAM II was not a party to the lease and landlords were justified in their concern about SAM II's willingness and ability to fulfill the terms of the lease.

In June 1993, the court awarded possession of the premises to landlords, $25,000 in damages, $234,496.75 in attorney fees, and $3,644.30 in costs. The attorney fees award was against Beckhaus, NJB, and Williams only. SAM II appealed the portion of the judgment granting possession of the premises to landlords and requested a stay of execution. Beckhaus, NJB and Williams did not appeal. When the unlawful detainer action commenced, Beckhaus and NJB were insolvent, and Williams filed for bankruptcy in August 1993.

In August 1993, the trial court granted SAM II's request for a stay of execution of the writ of possession pending appeal pursuant to Code of Civil Procedure[1] section 1176 on the following conditions: (1) that SAM II pay landlords $13,167 monthly rent in advance and all property taxes and assessments; (2) that SAM II post two bonds, one in the amount of $240,000 to secure performance of the rental payments, and a second in the amount of $238,000 to secure payment of the attorney fees awarded to landlords. The court was aware that attorney fees were not awarded against SAM II, but ordered the bond "to balance [] the equities between the parties." Landlords' counsel argued that, unless SAM II was required to post bond covering the

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

attorney fees award as a condition of its being permitted to retain possession of the property while the appeal was pending, SAM II would achieve all it hoped to by resisting the unlawful detainer action despite the fact that landlords had prevailed. In resisting the unlawful detainer action, SAM II contended the 1984 lease, rather than the 1991 lease, controlled and entitled it to remain in possession until 1994. By then, SAM II would have built up its Selma Toyota business and could relocate to other premises.

## The Bonds

SAM II petitioned respondent court for a writ of supersedeas and challenged the bonding conditions imposed by the trial court. On November 5, 1993, respondent court issued a writ of supersedeas conditioned on SAM II's posting a bond of at least $400,000. SAM II provided bond No. 2-572-899 (bond 1) issued by West American Insurance Company in the amount of $400,000 to secure (a) payment of the monthly rent, (b) payment of taxes and assessments, and (c) payment of any damages for waste. The surety, West American, did not typically underwrite such risks; so the bonding company, Sharp Insurance and Bonding Company (Sharp), continued to look for another surety to replace West American on the bond.

Landlords challenged the sufficiency of bond 1, contending it failed to indemnify real parties with respect to the attorney fees portion of the award. On December 3, 1993, respondent court declared the bond insufficient and ordered SAM II to post the bond "without condition of any kind." In response, SAM II filed bond No. 2-601-244 (bond 2) issued by West American Insurance Company in the amount of $400,000 to secure "all damages or costs which may be awarded [landlords] against SAM II under the judgment or arising from the stay of execution . . . ." On December 8, 1993, when SAM II filed West American's bond 2, it had obtained agreement from American Diversified Insurance Company to provide the bond. However, the bonding company was unable to secure possession of the executed original American Diversified bond within the five-day deadline set by respondent court for filing a sufficient bond and so filed bond 2 from West American with the intent of replacing bonds 1 and 2 with the American Diversified bond when it arrived. SAM II received the executed American Diversified bond No. AD 1727 (bond 3) on December 10, 1993. However, before SAM II did anything about substituting the bonds, landlords challenged the sufficiency of bond 2, contending its "ambiguous language" constituted an attempt to limit liability on the bond contrary to the express intentions of respondent court.

On December 17, 1993, respondent court clarified the bonding conditions. The court ordered SAM II to provide within five days a $400,000 bond for

the purpose of assuring to landlords the performance of Beckhaus, NJB, Williams, and/or SAM II as to payment of rent, taxes and assessments, any damages resulting from waste pending appeal and "payment of all attorneys' fees and/or costs awarded, or to be awarded . . . against appellants or any of them . . . ."

In response, SAM II's counsel, Marshall Whitney, obtained another bond from American Diversified, bond No. AD 19277 (bond 4), which complied with the respondent court's order. However, he did not obtain authority from SAM II or its president, Dwight Nelson, to file the bond. Nelson had insisted that SAM II would not guarantee the attorney fees awarded against Beckhaus and NJB. Mr. Whitney also filed a petition for writ of prohibition and/or mandate and request for stay of respondent court's order in this court.[2] On December 28, 1993, the last day remaining to file the new bond, this court issued an order staying that portion of respondent court's order requiring SAM II to post an undertaking to secure the attorney fees award. Accordingly, SAM II did not file another bond.

On January 3, 1994, SAM II's Toyota dealership was terminated and SAM II vacated the premises. Accordingly, Mr. Whitney withdrew his petition for relief from this court. On January 10, 1994, SAM II received a full satisfaction of judgment from landlords but did not abandon its appeal of the underlying judgment. At that point Mr. Whitney proposed that landlords stipulate to exonerate the posted bonds because all rent had been paid and no waste or other damage to the premises had occurred due to the stay of execution. They declined to do so.

In late January 1994, Sharp requested that SAM II replace the filed West American bonds (1 and 2) with the American Diversified bond (bond 3). Accordingly, Mr. Whitney wrote Mr. Glasrud, counsel for landlords, to arrange a stipulation to replace bonds 1 and 2 with bond 3. He specified that the purpose of the replacement was not to change the obligations underwritten but simply to change the surety. However, by what he claims was a mistake, he attached to the proffered stipulation a copy of bond 4 which specifically covered attorney fees rather than bond 3 which merely secured damages or costs which may be awarded to landlords against SAM II. Eventually the stipulation exonerating and replacing bonds was signed by all parties and bond 4, rather than bond 3, was filed with the court.

Respondent court affirmed the judgment of the justice court. The justice court awarded an additional $86,000 in postjudgment trial court attorney

---

[2]Pursuant to Evidence Code section 452, subdivision (d), we grant SAM II's request that we take judicial notice of the records of the prior writ proceeding (*Selma Auto Mall II* v. *Appellate Department* (Jan. 31, 1994) No. F020802 [nonpub. opn.]) in this court.

fees against Beckhaus and NJB. Respondent court issued its remittitur; however, because the decision failed to address costs, the remittitur was recalled on November 8, 1994.

On October 24, 1994, landlords made demand of SAM II on bond 4 for the $257,010.34 in attorney fees and costs they were unable to collect from Beckhaus, NJB, and Williams. According to Mr. Whitney, he then discovered he had attached the wrong bond to the stipulation and, on November 9, 1994, he moved for relief in respondent court to file the correct bond. Mr. Whitney made an extensive showing regarding how the mistake was made and perpetuated. Landlords opposed the motion. They contended there was no mistake justifying relief. They asserted they stipulated to allowing bond 4, a $400,000 bond which specifically covered attorney fees, to replace the two general bonds totaling $800,000 in security, which only "ambiguously" referred to attorney fees. They would not have stipulated to the substitution if the replacement bond did not cover attorney fees. Landlords did not believe bond 4 was offered in mistake. They believed that Nelson recognized he must offer landlords some inducement to trade $800,000 in bonds for a $400,000 bond. Further, Nelson was motivated by the need for $800,000 in additional bonding capacity with West American to meet the requirements of his expanding construction business. Finally, landlords contended they would be prejudiced if SAM II were permitted to substitute a $400,000 bond not specifically covering attorney fees in exchange for the $400,000 bond covering attorney fees which they had exchanged for $800,000 in general bonds.

While the motion was pending, respondent court issued an amended remittitur on November 17, 1994. Apparently neither respondent court nor counsel for the parties considered the effect of the remittitur's issuance on the court's power to hear the motion for relief.

On December 6, 1994, respondent court denied SAM II's request for relief finding: "While the facts and motivations of the parties are disputed, it is clear that the challenged bond was the only one submitted to [landlords] for consideration, they relied upon the documents provided by [SAM II], and modification of the bond at this late date would result in avoidable prejudice. The court is not convinced that a unilateral mistake justifying the requested relief exists."

On April 7, 1995, SAM II filed a motion to recall remittitur and to rehear motion for relief from stipulation. SAM II claimed the December 6 order was void because respondent court lost jurisdiction of the case by issuing the

remittitur before it ruled on the motion. Concurrently, SAM II filed a motion for relief from mistake in the justice court. Landlords opposed the motion contending: (1) SAM II in effect was improperly requesting reconsideration on facts identical to those raised in the original motion, and (2) the order was not void because, despite the earlier issuance of remittitur, respondent court retained jurisdiction to rule on collateral matters such as SAM II's request for relief.

Respondent court denied SAM II's request to recall remittitur. In a ruling filed May 9, 1995, it concluded it had jurisdiction to rule on the motion for relief despite issuance of the remittitur. Further, even if it recalled the remittitur, it would deny the motion for relief. The court added, "it would be inappropriate for the trial court to take any action that conflicts with the findings of this court." Landlords then filed a motion in respondent court to enforce liability on the bond.

SAM II petitioned this court for a writ of certiorari, prohibition, and/or mandate challenging the jurisdiction of respondent court to hear and deny its motion for relief from a stipulation exonerating bond after the court had issued the remittitur. We stayed further proceedings in respondent court, issued an order to show cause, and requested briefing on the issue of whether the December 17, 1993, order of respondent court was enforceable insofar as it required SAM II to post an undertaking to secure landlords' attorney fees.

DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *Respondent Court's Order Requiring SAM II to Post a Bond Securing Attorney Fees for Which It Was Not Liable Was an Abuse of Discretion.*

 The trial court granted SAM II's request to stay the judgment of possession pursuant to section 1176, subdivision (a) (section 1176(a)) on the condition, among others, that SAM II pay landlords the sum of $238,000 as compensation for a portion of the attorney fees landlords expended to recover possession of the property. The court ordered the sum to be payable at the conclusion of the appeal and on the condition the reviewing court affirmed the portion of the judgment awarding attorney fees to landlords. The court further ordered SAM II to post a $238,000 bond to assure

*See footnote, *ante,* page 1672.

landlords' receipt of the sum if landlords were unable to collect the judgment from SAM II's codefendants.

Respondent court, in effect, upheld the trial court's order, on December 17, 1993, by issuing a stay of supersedeas on the condition that SAM II post a $400,000 undertaking, personal guaranty or bond to assure, among other things, that landlords would receive "payment of all attorneys' fees and/or costs awarded, or to be awarded, by the trial court or [respondent court] against Appellants or any of them . . . ."

*Lawful Conditions on Granting a Stay Pursuant to Section 1176(a)*

Section 1178 states that the general Code of Civil Procedure sections governing stays of enforcement in civil appeals (§§ 916-923) apply to appeals in unlawful detainer proceedings, except insofar as they are inconsistent with the unlawful detainer provisions (§§ 1161-1179a). Section 1176(a), the statute addressing stays of enforcement pending appeal in unlawful detainer actions, is inconsistent with the general provision, section 917.4, which addresses judgments directing the delivery of real property.[4] Section 917.4 provides that the judgment will ordinarily be stayed as a matter of right by furnishing bond, whereas section 1176(a) requires the appellant to show the trial judge that a stay is appropriate. Thus, section 1176(a) rather than section 917.4 governs the propriety of the bonding condition imposed. (Cf. *Mendoza* v. *Small Claims Court* (1958) 49 Cal.2d 668, 671-672 [321 P.2d 9]; 6 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) Landlord and Tenant, § 18:151, p. 457; *id.* (1996 supp.) p. 145.)

Section 1176(a) provides: "An appeal taken by the defendant shall not automatically stay proceedings upon the judgment. . . . Stay of judgment shall be granted when the court finds that the moving party will suffer extreme hardship in the absence of a stay and that the nonmoving party will not be irreparably injured by its issuance. If the stay is denied by the trial court, the defendant may forthwith file a petition for an extraordinary writ with the appropriate appeals court. If the trial or appellate court stays

---

[4]Section 917.4 provides: "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs . . . delivery of possession of real property which is in the possession or control of the appellant . . . unless an undertaking in a sum fixed by the trial court is given that the appellant . . . shall pay the damage suffered by the waste and the value of the use and occupancy of the property . . . . If the judgment or order directs the sale of mortgaged real property and the payment of any deficiency, the undertaking shall also provide for the payment of any deficiency."

enforcement of the judgment, *the court may condition the stay on whatever conditions the court deems just*, but in any case it shall order the payment of the reasonable monthly rental value to the court monthly in advance as rent would otherwise become due as a condition of issuing the stay of enforcement. . . ." (Italics added.)

The statutory language at issue vests the court with discretion to impose conditions on granting the stay. (Cf. *Mendoza* v. *Small Claims Court, supra*, 49 Cal.2d at p. 672.) But it does not explain what considerations should guide the court in the exercise of that discretion. Landlords contend the order conditioning the stay on SAM II's guarantee of payment of the portion of the judgment awarding landlords attorney fees against its codefendants is a "just" condition within the statute's broad grant of discretion to the court. SAM II submits there is no legal authority for such an order, hence, it is in excess of the court's jurisdiction and an abuse of discretion.

*Standard of Review*

Orders regarding stays of execution and the posting of related bonds are reviewed under the abuse of discretion standard. (*Mehr* v. *Superior Court* (1983) 139 Cal.App.3d 1044, 1050 [189 Cal.Rptr. 138] [court abused its discretion in denying tenants' motion for a stay of execution of the judgment pending determination of their appeal]; *Vangel* v. *Vangel* (1953) 116 Cal.App.2d 615, 632 [254 P.2d 919] [discretion in fixing size of appellate bond must be exercised in a manner compatible with the potential injury which respondents might suffer during the period of appeal].) Under this standard, the court's exercise of discretion will be disturbed only for clear abuse. If there is any basis on which the court's order can be sustained and if no injustice will result, the order must be upheld. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

*Liability for Another's Attorney Fees*

██ California follows the American rule, which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. (*Trope* v. *Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Section 1021 codifies the rule: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties; . . ." *Glynn* v. *Marquette* (1984) 152 Cal.App.3d 277 [199 Cal.Rptr. 306] illustrates application of the rule under circumstances analogous to this case. Plaintiff won an award of specific performance of a land sale contract against a third party to whom the seller conveyed the land after making the contract with plaintiff. The

court denied plaintiff's request for an award of attorney fees against the third party. Although the contract entered into by plaintiff and the seller provided that the prevailing party in any action to enforce it would be entitled to attorney fees, the third party was not a party to that contract and did not expressly assume its obligations. (*Id.* at p. 280.) Further, the third party was not a "party" to the contract within the meaning of Civil Code section 1717. (*Glynn* v. *Marquette, supra,* at p. 282.)

 In this case, landlords and Beckhaus, NJB, and Williams "contracted out" of the American rule by agreeing under the terms of the 1991 lease that, on breach and suit, the prevailing party could recover attorney fees. Accordingly, the unlawful detainer judgment properly awarded landlords their attorney fees against Beckhaus, NJB, and Williams pursuant to the attorney fees provision of the lease agreement. That award was not and could not have been entered against SAM II because it was not a party to the lease, nor was there any evidence that it expressly assumed the obligations of that contract. Nevertheless, the court required SAM II to post a bond guaranteeing payment of the attorney fees portion of the judgment for which it was not liable. In doing so, the court, in effect, awarded attorney fees against SAM II as well as the signatories to the lease, something it could not do under the attorney fees statutes and case law.

*Effect of Imposing the Attorney Fees Bonding Condition*

 When a court grants relief which it has no authority to grant, its judgment is to that extent void. (*Michel* v. *Williams* (1936) 13 Cal.App.2d 198, 199 [56 P.2d 546].) In *Michel,* the court awarded costs against a corporation whose default had been entered in a quiet title action. An applicable statute provided that a plaintiff could not recover costs from a defendant when the judgment was taken against him or her without answer. More than six months later, the corporation filed a motion to be relieved from the purported judgment for costs. Plaintiff opposed the motion, arguing the court was without jurisdiction to modify the judgment because of the passage of time and because the judgment was merely erroneous, not void. The court disagreed.

The court has power to vacate an order void on its face at any time upon its own motion or upon motion of a party. Proceedings outside the authority of the court, or in contravention of statutory prohibitions, are, whether the court has jurisdiction of the parties and subject matter of the action or not, "utterly void." (*Michel* v. *Williams, supra,* 13 Cal.App.2d at p. 200.) The mere fact that the court has jurisdiction of the subject matter of an action

before it does not justify an exercise of a power not authorized by law, or a grant of relief to a party that the law declares shall not be granted. (*Ibid.*) When the court is permitted by statute to render judgment for costs, an excessive award would be erroneous rather than void. However, an award of costs not authorized by law is a " 'grant of relief to one of the parties which the law declares shall not be granted' " and is therefore void. Because the court was without authority to enter a judgment for costs against the corporation, the order relieving the corporation from this part of the judgment was proper. (*Id.* at p. 201.)

Likewise, in *Spreckels S. Co.* v. *Industrial Acc. Com.* (1921) 186 Cal. 256, 260-261 [199 P. 8], the court held that when the amount allowed as a death benefit is prescribed by statute, the commission, in allowing a different amount, rendered an unlawful award in excess of its jurisdiction. The court explained that "jurisdiction" means more than simply authority over the subject matter or question presented. It also means authority to do the particular thing done or, conversely, lack of authority to exercise a power in a particular manner or doing something in excess of the authority possessed. (*Id.* at p. 260.)

■ No statute or case law authorizes awards of attorney fees in unlawful detainer actions generally. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 715, p. 901.) Moreover, we are not aware of any statute or case law permitting the court to condition a stay of execution of judgment in an unlawful detainer proceeding on the agreement of the party requesting the stay to guarantee the attorney fees portion of the judgment not awarded against it. Therefore, unless the order is authorized under section 1176(a)'s "whatever conditions the court deems just," it constitutes an act in excess of jurisdiction.

*"Conditions the Court Deems Just"*

Landlords contend the bonding condition is "just" within the meaning of section 1176(a). They argue, first, the statute places no limitations on the court's exercise of discretion in imposing conditions it deems just. Second, given the unusual circumstances of this case, making SAM II responsible for landlords' attorney fees in exchange for granting the stay of judgment pending appeal was the only means to achieve a just result. They submit SAM II is justly responsible for the attorney fees landlords incurred in securing possession of the property because: (1) SAM II was not an ordinary tenant; it was a squatter unlawfully occupying landlords' premises; (2) the original signatories to the lease were insolvent when landlords commenced

the unlawful detainer proceeding; therefore, SAM II must have financed the "vigorous level of resistance" mounted to landlords' rightful claim to possession; and (3) SAM II's vigorous defense forced landlords to incur $238,000 in attorney fees. Thus, even though SAM II was not contractually responsible for landlords' attorney fees, it was "just" within the meaning of section 1176(a) that it should pay those fees.

In construing a statute our primary task is to determine the lawmakers' intent so as to effectuate the purpose of the statute. (*McNabb* v. *Department of Motor Vehicles* (1993) 20 Cal.App.4th 832, 837 [24 Cal.Rptr.2d 641].) We look first to the language of the statute and accord the words their usual, ordinary, and common sense meaning in light of the purpose for which the statute was enacted. If the language is clear and unambiguous, there is no need for construction. (*Ibid.*) Every statute should be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82, 100 [266 Cal.Rptr. 117, 785 P.2d 500].)

"Just" means honorable and fair, consistent with moral right and valid within the law; legitimate. (Am. Heritage Dict. (2d college ed. 1985) p. 694.) Webster's Third New International Dictionary (1986) defines "just" as "in conformity with what is morally right or good," "merited, deserved" and "conforming to . . . what is . . . lawful." (At p. 1228.)

A number of statutes authorize the court to impose "just" conditions or terms when determining an issue or rendering an order. (See, e.g., §§ 93, 95, 97, 473, 491.170, 572, 1250.340, 1260.120, 1710.50, 2025, subd. (i)(15), 2030, 2031, 2032, 2033, 2034; Bus. & Prof. Code, § 7095; Gov. Code, §§ 985, 11519, 12963.4, 68152, subd. (k)(1), 68915.) But the research of both counsel and this court has unearthed very little case law helpful to the resolution of whether the bonding order at issue is a "just" condition.

By analogy, cases discussing conditions attached to other orders shed some light on the question. A number of discovery statutes authorize the court to compel discovery on terms that are just (§§ 2025, subd. (i), 2030, subd. (e), 2033, subd. (e), and 2034, subd. (k)). Case law, however, has limited this broad statutory grant of power, holding that courts cannot expand the methods of discovery beyond those authorized by statute. "[T]he power to compel discovery is circumscribed by statute and a court is without jurisdiction to compel a party to perform acts that are beyond the pale of the discovery act." (*Stermer* v. *Superior Court* (1993) 20 Cal.App.4th 777, 781 [24 Cal.Rptr.2d 577]; and see Cal. Law Revision Com. com., 19 West's

Ann. Code Civ. Proc. (1982 ed.) § 1260.120, p. 744 [§ 1260.120, subd. (c)(2), empowering court to order conditional dismissal of eminent domain proceeding under conditions the court deems just does not permit court to create a right to acquire where none exists].)

Under section 1176(a), a stay pending appeal should not be granted unless it is shown that the nonmoving party (i.e., landlords) "will not be irreparably injured" by the stay's issuance. We construe the provision empowering the court to issue a stay on "just" conditions as requiring some reasonable relationship between the conditions imposed and the prevention of injury which would otherwise be suffered by the nonmoving party from an unconditional stay. We do not see such a reasonable relationship here. Whether SAM II appealed from the judgment, whether the writ of possession was stayed on appeal, and whether SAM II prevailed or lost on appeal, landlords' attorney fees award was enforceable against those defendants who were parties to the lease but did not appeal. If the judgment for fees was uncollectible, it was because of those defendants' insolvency, not because of SAM II's appeal or because of the order staying the writ of possession. The attorney fee bonding condition, if valid and enforceable, simply enriches landlords with a bonus, at SAM II's expense, for prevailing on an appeal which did not involve the attorney fees award.

*Hsu v. Abbara* (1995) 9 Cal.4th 863 [39 Cal.Rptr.2d 284, 891 P.2d 804] is instructive. There, the Supreme Court held that, in determining the "prevailing party" for an award of attorney fees under Civil Code section 1717, the trial court may not invoke equitable considerations unrelated to the litigation success, such as the parties' behavior during settlement negotiations or discovery proceedings, except as expressly authorized by statute. To admit such factors would convert the attorney fees motion from a relatively uncomplicated evaluation of the parties' comparative litigation success into a formless, limitless attack on the ethics and character of every party who seeks attorney fees under Civil Code section 1717. (9 Cal.4th at p. 877.) The same policy should apply in this case. Permitting the trial court to impose "just" conditions based on the moral character or blameworthiness of the ousted tenant adds a formless dimension to the unlawful detainer proceeding, which otherwise is essentially limited to the possessory rights of the parties to the property at issue. We find no indication the Legislature intended that the conditions for stay determination be made in this way.

We conclude that section 1176(a)'s provision, "the court may condition the stay on whatever conditions the court deems just," must be read as authorizing the court to impose a just condition otherwise authorized by law

and bearing some reasonable relationship to the injury the nonmoving party might otherwise suffer from an unconditional stay. Such conditions would include provisions to protect the status quo pending appeal and to pay the damages the nonmoving party may sustain by virtue of the stay. ▮ Conversely, section 1176(a) does not authorize the court to impose a condition running contrary to a statutory provision or case law. Since under the American rule, the 1991 lease and Civil Code section 1717, SAM II was not liable for landlords' attorney fees in prosecuting the unlawful detainer action, and because the stay on appeal did not affect landlords' ability to collect those fees from the liable parties, the court was without authority to order SAM II to guarantee the payment of such fees for its codefendants as a condition of granting the stay. Accordingly, the order of respondent court requiring SAM II to post bond securing the payment of the attorney fees portion of the judgment was an abuse of discretion.[5]

If the only issue remaining before the trial court was whether landlords could enforce liability on the bonds SAM II originally filed in compliance with the court's stay order, to recover their attorney fees, our conclusion that the attorney fees portion of the bonding condition is void would compel a negative response. However, bond 4, which landlords seek to enforce, was filed by stipulation. A party may agree to a condition even if the court lacks authority to impose it independent of the agreement. Thus, our decision here does not put an end to the case. The trial court must hear and determine SAM II's motion for relief from its alleged mistake in attaching the "wrong" bond to the stipulation. The parties' arguments addressing that contention must be considered in light of the fact that the bonding condition requiring SAM II to secure attorney fees awarded only against its codefendants was a void order. If the motion for relief is denied, the trial court must also hear and determine landlords' motion to enforce liability on bond 4.

## DISPOSITION

Let a writ of mandate issue directing respondent court (1) to vacate and set aside its order dated December 5, 1994, and filed December 6, 1994, and its order dated May 8, 1995, and filed May 9, 1995, and (2) to refrain from conducting further proceedings which are inconsistent with this opinion.

This court's order of June 29, 1995, staying further proceedings in respondent court shall remain in effect only until this opinion is final in all courts of this state, respondent court complies with the above stated directions, or

---

[5]In view of this conclusion, we do not reach SAM II's second argument that the attorney fees bonding condition exceeded the jurisdictional amount of the trial court.

the Supreme Court grants a hearing herein, whichever shall first occur; thereafter, said stay is dissolved.

Costs to petitioner.

Ardaiz, P. J., and Harris, J., concurred.