[No. S057119. Dec. 1, 1997.]

EMERSON ELECTRIC CO. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WILLIAM S. GRAYSON et al., Real Parties in Interest.

## COUNSEL

Hennelly & Grossfeld, John J. Hennelly and Susan J. Williams for Petitioners.

Hugh F. Young, Jr., Jan S. Amundson, Harvey M. Grossman, Sherman Joyce, Crowell & Moring, Victor E. Schwartz, Mark A. Behrens, Nabil W. Istafanous, D. Dudley Oldham, Pepper, Hamilton & Scheetz, Alfred W. Cortese, Jr., Kathleen L. Blaner, Sedgwick, Detert, Moran & Arnold and Keven J. Dunne as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Berglund & Johnson and Daniel W. Johnson for Real Parties in Interest.

Ian Herzog, Evan D. Marshall, Douglas Devries, Roland Wrinkle, Harvey R. Levine, Robert Steinberg, Thomas G. Stolpman, William D. Turley, Mary E.

Alexander, Joseph Harbison III, Bruce Broillet, Wayne McLean, Leonard Sacks, Tony Tanke, Lea-Ann Tratten, Steven J. Kleifield, David Rosen, Moses Lebovits, Christine Spagnoli, James Sturdevant, Daniel U. Smith, Deborah David, Lawrence Drivon, Thor Emblem, Rick Simons and David Casey, Jr., as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**MOSK, J.**—Code of Civil Procedure section 2025, enacted by the Civil Discovery Act of 1986, permits a party to record testimony at an oral deposition by videotape as well as stenographically. (*Id.*, subd. (*l*).) It also provides that if a deponent "fails to answer any question," the court has discretion to order that the answer be given. (*Id.*, subd. (o).)

In this matter, defendants sought to compel plaintiff, who allegedly was injured while using their product, to demonstrate how the injury occurred. We granted review to resolve a conflict in our Courts of Appeal concerning the authority of the trial court to order such a nonverbal response, pursuant to Code of Civil Procedure section 2025, subdivision (o). We address two related questions: first, whether "answer," as used in Code of Civil Procedure section 2025, subdivision (o), includes nonverbal as well as verbal responses at a videotaped deposition; and second, whether the trial court may impose a sanction, including evidence preclusion, if a deponent refuses to comply with an order compelling that a nonverbal "answer" be given.

We conclude that the answer to each question is affirmative. Accordingly, we affirm the judgment of the Court of Appeal in this matter and disapprove *Stermer* v. *Superior Court* (1993) 20 Cal.App.4th 777 [24 Cal.Rptr.2d 577], to the extent it holds to the contrary.

### I.

Real party in interest William S. Grayson (hereafter Grayson) brought this action against petitioners Emerson Electric Co. and Sears, Roebuck & Co. (hereafter Emerson) after he was allegedly injured while using their product, a radial arm saw. His complaint includes causes of action for strict liability, breach of warranty, and negligence.

Emerson noticed a videotaped deposition of Grayson. At the deposition, Grayson was asked to diagram the location of the saw and his position at the time of the accident. His attorney instructed him to refuse, based on the objection that he could not be required to give a nonverbal response at a

deposition. On the same ground, counsel refused to permit him to reenact the accident.

Emerson moved for an order precluding Grayson from reenacting the accident at trial; in the alternative, it moved for an order compelling him to provide nonverbal testimony, including a reenactment, at his videotaped deposition. Grayson opposed the motions.

At the hearing, although expressing strong disagreement with *Stermer* v. *Superior Court*, *supra*, 20 Cal.App.4th 777, the superior court concluded that it was bound by the holding therein that a trial court has no authority to order a deponent to give nonverbal testimony: "The appellate case certainly says clearly to me that I don't have the right to order your client to demonstrate how the accident occurred. . . . I think that should be the law, that an examining attorney would have the right to say at a deposition, please show what you were doing when the accident occurred. And act it out. Reenact it, you know. And I don't know why that shouldn't be possible." Although stating that Grayson's refusal was "ridiculous and not fair," it ruled that *Stermer* also precluded a discovery sanction: "I can't penalize a man because he did what the law permits him to do or not to do." It denied both motions "without prejudice."

Emerson petitioned for a writ of mandate in the Court of Appeal. The Court of Appeal expressly disagreed with *Stermer*, holding that a deponent could be required to give nonverbal as well as verbal responses at a videotaped deposition. It ordered that a peremptory writ of mandate issue, commanding the superior court to vacate its original order and hold a new hearing to "exercise its discretion and, based thereon, make such further order as is appropriate." We granted review.

## II.

### A.

Code of Civil Procedure section 2025 governs oral depositions, including videotaped depositions. Enacted as part of the Civil Discovery of Act of 1986 (*id.*, § 2016 et seq.), it provides, in relevant part: "Unless the parties agree or the court orders otherwise, the testimony, as well as any stated objections, shall be taken stenographically. The party noticing the deposition may also record the testimony by . . . videotape if the notice of deposition stated an intention also to record the testimony by [that] method[], or if all the parties agree that the testimony may also be recorded by [that] . . . method[]. . . . Examination and cross-examination of the deponent shall

proceed as permitted at trial under the provisions of the Evidence Code." (Code Civ. Proc., § 2025, subd. (*l*)(1).)

Code of Civil Procedure section 2025 also permits a party to enforce the discovery right. It thus provides: "If a deponent fails to answer any question . . . , the party seeking discovery may move the court for an order compelling that answer . . . ." (*Id.*, subd. (o).) If a party deponent fails to obey an order to do so, the court may "make those orders that are just against the disobedient party." (*Ibid.*)

### B.

 Grayson contends that the Code of Civil Procedure section 2025, subdivision (o)—in referring to a deponent's failure to "answer any question"—"clearly and unambiguously" applies only to a verbal answer. He relies on *Stermer* v. *Superior Court, supra,* 20 Cal.App.4th 777, which so holds.[1]

The reliance is misplaced. *Stermer* concluded that requiring a nonverbal response was "beyond the pale of the discovery act." (*Stermer* v. *Superior Court, supra,* 20 Cal.App.4th at p. 781.) It reasons as follows. "The term 'question' is defined as 'an interrogative expression often used to test knowledge.' [Citation.] To 'answer' a question is simply 'to speak or write in reply' thereto. [Citation.] However, a reenactment at a deposition requires something more than a mere answer—it requires that the deponent perform a host of nonverbal actions that go well beyond answering questions. In other words, the reenactment necessarily includes a series of acts by the deponent which are not of a verbal nature." (*Ibid.*)

The reasoning is unpersuasive. The language, context, and legislative history of Code of Civil Procedure section 2025, subdivision (o), compel a different conclusion.

To "answer" a question is, as *Stermer* observed, " 'to speak or write in reply' thereto" (20 Cal.App.4th at p. 781); but it is not *simply* that. To "answer" is *also* "to act in response to a request" (Webster's New Internat. Dict. (3d ed. 1961) p. 90); it is a "general term . . . and is used without

---

[1]In *Stermer,* as here, the nonverbal testimony at issue was a "physical reenactment." (*Stermer* v. *Superior Court, supra,* 20 Cal.App.4th at p. 779.) In that case, the defendants—the manufacturer and the seller of an infant car seat—were sued by the parents of a child killed in an automobile accident. At a videotaped deposition of the mother, defendants' counsel asked her to "perform, before the camera, the manner in which she placed and secured the infant into the car seat." (*Ibid.*) The Court of Appeal concluded that she could not be compelled to do so. (*Id.* at p. 782.)

especial suggestion for any action of saying, writing, or *doing* something called for in return." (*Ibid.*, italics added.) Construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition is thus in accord with the "usual, ordinary" meaning of the word. (*Selma Auto Mall II* v. *Appellate Department* (1996) 44 Cal.App.4th 1672, 1685 [52 Cal.Rptr.2d 599] ["In construing a statute . . . [w]e look first to the language of the statute and accord the words their usual, ordinary . . . meaning in light of the purpose for which the statute was enacted."].)

Construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition also harmonizes the provision with the requirement of Code of Civil Procedure section 2025, subdivision (*l*)(1) that "[e]xamination and cross-examination of the deponent shall proceed as permitted at trial under the provisions of the Evidence Code." It is undisputed that at trial evidence may include a nonverbal answer to a question, including a physical demonstration or reenactment of an incident. (*People* v. *Buttles* (1990) 223 Cal.App.3d 1631, 1639 [273 Cal.Rptr. 397]; *DiRosario* v. *Havens* (1987) 196 Cal.App.3d 1224, 1230-1233 [242 Cal.Rptr. 423].)

Construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition also serves what we have previously recognized as one of the legislative purposes of the discovery statutes: principally, to educate the parties concerning their claims and defenses so as to encourage settlements and to expedite and facilitate trial. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].) "Certainly, it can be said, that the Legislature intended to take the 'game' element out of trial preparation while yet retaining the adversary nature of the trial itself. One of the principal purposes of discovery was to do away 'with the sporting theory of litigation—namely, surprise at trial.'" (*Ibid.*)

As we explained in *Greyhound*, in order to accomplish this purpose, the discovery statutes "must be construed liberally in favor of disclosure." (56 Cal.2d at p. 377.) We observed that the discovery statutes "vest . . . wide discretion in the trial court in granting or denying discovery" (*id.* at p. 378), but emphasized that "appellate courts in passing on orders granting or denying discovery should not use the trial court's discretion argument to defeat the liberal policies of the statute" (*id.* at p. 379). We also acknowledged the broad scope of the discovery right, permitting a deponent to be examined " 'regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action' "—even if the testimony will

not be admissible at trial—so long as it " 'appears reasonably calculated to lead to the discovery of admissible evidence.' " (*Id.* at p. 370, quoting former Code Civ. Proc., § 2016, subd. (b), as amended by Stats. 1959, ch. 1590, § 1, p. 3920.)

Our conclusions in *Greyhound* apply equally to the new discovery statutes enacted by the Civil Discovery Act of 1986, which retain the expansive scope of discovery. (See Code Civ. Proc., § 2017, subd. (a) ["Unless otherwise limited by order of the court in accordance with this article, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."].)

Construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition is also supported by the legislative history of the statute. The Civil Discovery Act of 1986 was enacted as a "comprehensive revision of the statutes governing discovery" intended to "bring California law closer to the discovery provisions of the Federal Rules of Civil Procedure." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 169 (1985-1986 Reg. Sess.) p. 10.) Among the discovery tools available under the Federal Rules of Civil Procedure (28 U.S.C.) at that time, as now, were videotaped depositions. Thus, as rule 30(b)(4) of the Federal Rules of Civil Procedure then stood, the parties could stipulate, or, upon motion, the court could order, that a deposition be recorded by videotape. As then construed by the federal courts, the rule encompassed nonverbal as well as verbal responses, including reenactments. (See *Roberts* v. *Homelite Div. of Textron, Inc.* (N.D.Ind. 1986) 109 F.R.D. 664, 668 [reenactment of a lawn mower injury]; *Carson* v. *Burlington Northern Inc.* (D.Neb. 1971) 52 F.R.D. 492, 493 [reenactment of a steel press injury]; see also *Kiraly* v. *Berkel, Inc.* (E.D.Pa. 1988) 122 F.R.D. 186, 188 [reenactment of meat slicer injury]; *Rice's Toyota World* v. *S.E. Toyota Dist.* (M.D.N.C. 1987) 114 F.R.D. 647, 650 ["Video depositions have also been authorized in order to permit the witness to reconstruct an accident. Aside from its use at trial, such a deposition has discovery value by making a record of the description of the event that cannot possibly be made by a mere stenographic deposition."].)[2]

It appears, moreover, that a legislative purpose for initially authorizing videotaping of depositions, under former Code of Civil Procedure section

---

[2]Grayson urges that, unlike Code of Civil Procedure section 2025, the then current federal rule did not permit a party to obtain a videotaped deposition as of right, but only by stipulation or court order. We find the distinction of no significance. Indeed, the federal rule was subsequently amended, in 1993, to permit a party to notice a videotaped deposition

2019, was precisely to allow the recording of nonverbal as well as verbal responses by a deponent. A report by the Assembly Committee on Judiciary thus refers to the "improvements" in the discovery procedures under that provision—which were continued under the Civil Discovery Act of 1986 (see Code Civ. Proc. § 2025, subd. (*l*))—as including the use of videotaping to "permit the recording of both the spoken word and gestures and demeanor of witnesses." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2473 (1979-1980 Reg. Sess.) p. 2.) The same legislative history also indicates that such authorization of videotaped depositions was intended to supersede our decision in *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970 [140 Cal.Rptr. 669, 568 P.2d 394], which involved a request by the defendant for an order compelling the reenactment of an accident—as here, involving a radial arm saw—at a videotaped deposition. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2473 (1980 Reg. Sess.) p. 2.) In *Bailey*, we noted the disparity between the California and the federal rules governing depositions. (*Bailey* v. *Superior Court, supra,* 19 Cal.3d at pp. 974-975, fn. 5.) We concluded that the Code of Civil Procedure did not permit videotaped depositions without the mutual consent of the parties. (*Id.* at p. 978.) We emphasized that "[w]hether this court believes videotaping is as reliable as, or more advantageous than, the traditional means of recording a deposition is not the issue." (*Id.* at p. 977.) We explained that it was for the Legislature to determine whether methods of recording and reporting depositions other than stenographic and written transcriptions should be authorized. (*Id.* at p. 978.) By amending the discovery statutes to permit videotaped depositions, the Legislature expressly so determined.

Grayson warns that construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition will inevitably result in discovery abuse because demonstrations and reenactments are "inherently misleading."

He is unpersuasive. Far from "inherently misleading," a demonstration or reenactment of an incident may well provide a more direct and accurate description than a verbal description of the same event.[3]

---

without either stipulation of counsel or court order. (See Fed. Rules Civ.Proc., rule 30, 28 U.S.C., advisory com. note to 1993 amendments to subd. (b).) It has been liberally construed to permit a party to obtain a nonverbal response to a question, including a reenactment. (See, e.g., *Gillen* v. *Nissan Motor Corp. in U.S.A.* (E.D.Pa. 1994) 156 F.R.D. 120, 122 [compelling "demonstration" of seatbelt defect].)

[3]One practice guide, Weil and Brown, California Practice Guide: Civil Procedure Before Trial 2 (The Rutter Group 1996) paragraph 8:659, at pages 8E-72 to 8E-73, indicates that initial concerns about abusive use of videotaped depositions have proven unfounded: "In the past, lawyers worried that the witness might be distracted by the video camera; or that

Grayson also argues that construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition will create undue risks and burdens for the deponent because, unlike trials, depositions are not subject to control by a judge.

Again he is unpersuasive. Code of Civil Procedure section 2025 provides extensive safeguards against discovery abuse that do not require judicial intervention, including procedural requirements concerning who may operate the recording equipment, the nature of the area used for recording the testimony, and proscriptions against distorting the appearance or demeanor of participants in the deposition by the use of camera or sound recording techniques. (*Id.*, subd. (*l*)(2)(A)-(I).) A deponent may also interpose, on the stenographic and videotaped record, objections concerning any errors or irregularities in response to a request for a demonstration or reenactment. (*Id.*, subd. (m).)

Code of Civil Procedure section 2025 also permits judicial intervention. It provides that any party, any deponent, or any other affected natural person or organization may promptly move the court for a protective order, whether "[b]efore, during, or after a deposition." (*Id.*, subd. (i).) The court retains broad discretion to order limitations or conditions on the party seeking to carry out a videotaped reenactment to protect against "unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." (*Ibid.*; see also *id.*, subd. (n).) The court may also appoint a referee to preside over the deposition and rule on any objections. (*Id.*, § 639.)

Generally, a deponent seeking a protective order will be required to show that the burden, expense, or intrusiveness involved in the videotaped deposition clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence. (Code Civ. Proc., § 2017, subd. (c).) It is also grounds for relief that a reenactment at a videotaped deposition would be unreasonably cumulative or duplicative, or unduly burdensome or expensive. (*Id.*, § 2019, subd. (b).) In the appropriate case, the court may limit or preclude the request for a reenactment altogether, on safety, feasibility, or other grounds. (*Id.*, § 2025, subd. (i).) The need for, and nature of,

opposing counsel might engage in unnecessary theatrics. But experience with videotape generally proves otherwise. [¶] First of all, videotaping usually *cuts down on abuses by counsel* during the deposition . . . . [¶] It also tends to make the *witness more candid.* . . . [¶] It also provides a far *better record* of the examination than any transcript or audiotape. . . . [¶] The deponent can be requested to demonstrate or 'act out' what happened. For example, in product liability cases, the plaintiff can be asked to show how he or she *used* the product (often providing invaluable evidence where misuse is claimed)." (Original italics.)

such a protective order will, of course, depend on the circumstances of the individual case.[4]

Finally, Grayson urges that construing "answer" in Code of Civil Procedure section 2025, subdivision (o), to include nonverbal as well as verbal responses at a videotaped deposition would be inconsistent with our admonition in *People* v. *Dabb* (1948) 32 Cal.2d 491 [197 P.2d 1] concerning the potential misuse of motion picture evidence. We observed: "A motion picture of the artificial recreation of an event may unduly accentuate certain phases of the happening, and because of the forceful impression made upon the minds of the jurors by this kind of evidence, it should be received with caution." (*Id.* at p. 498)

*Dabb* is inapposite; it involved the admissibility of motion picture reenactments at a criminal trial, not their availability for discovery purposes. The use of a videotaped reenactment *at trial* is a separate question, not raised here. Notably, however, Code of Civil Procedure section 2025 makes extensive provision for the trial court to receive videotaped depositions, for use at trial or any other hearing in the action, with appropriate caution. Thus, a party intending to offer any part of a videotaped deposition at a trial or hearing must provide written notice of such intent in sufficient time for objections to be made and ruled on by the judge, and for any editing of the tape. (Code Civ. Proc., § 2025, subd. (*l*)(2)(I).) The court also has broad discretion to exclude videotaped demonstrations or reenactments at trial. (*Ehrhardt* v. *Brunswick, Inc.* (1986) 186 Cal.App.3d 734, 741 [231 Cal.Rptr. 60].)[5]

For all these reasons, we conclude that Code of Civil Procedure section 2025, subdivision (o), should be construed to include nonverbal as

---

[4]Federal precedents offer numerous examples of orders permitting videotaped demonstrations but imposing conditions, for safety or other reasons. (See, e.g., *Roberts* v. *Homelite Div. of Textron, Inc., supra,* 109 F.R.D. at p. 668 [compelling videotaped reenactment of accident with a lawn mower, provided that "the re-enactment must be conducted so that the safety of the parties is in no way jeopardized"]; *Carotenuto* v. *Emerson Electric Company* (E.D.Pa. 1990) 1990 WL 198820, p. *1 [compelling reenactment of accident with a radial arm saw, provided that the plaintiff "will not be compelled to demonstrate what happened to him on an operating machine"]; *Carson* v. *Burlington Northern Inc., supra,* 52 F.R.D. at p. 493 [compelling reenactment of a steel press injury, provided that the "plaintiff shall not be requested to actually touch or operate the machine in question"]; see also *Brown* v. *Bridges* (Fla.Dist.Ct.App. 1976) 327 So.2d 874, 876 [compelling demonstration of karate maneuvers, subject to "imposition of additional safeguards, if any, which the trial court may find to be necessary and proper"].)

[5]Although a deponent may be compelled to reenact an accident at a videotaped deposition, it does not follow that the recording will be admissible at trial. It may be excluded, for example, based on problems of hearsay, authenticity, relevance, probative value as weighed against prejudice, or undue consumption of time. (See *DiRosario* v. *Havens, supra,* 196 Cal.App.3d at p. 1231; Evid. Code, §§ 1220, 1401, 210, 351, 352.) *Dabb* emphasized: "Protection against falsification or misrepresentation lies in the requirement of preliminary

well as verbal responses at a videotaped deposition—which may require a deponent to perform a demonstration or reenactment at the request of a party.

## C.

■ Code of Civil Procedure section 2025, subdivision (o), in relevant part provides: "If a deponent fails to obey an order entered under this subdivision, the failure may be considered a contempt of court. In addition, if the disobedient deponent is a party to the action . . . the court may make those orders that are just against the disobedient party . . . , including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023."

It follows from the foregoing that a deponent refusing to comply with an order by the trial court requiring him to perform a demonstration or reenactment may be subject to discovery sanctions, at the discretion of the court. Disobeying a court order to reenact an accident at a videotaped deposition may constitute a misuse of the discovery process. (Code Civ. Proc., § 2023, subd. (a)(7).) As in the case of any discovery abuse, "the court, after notice to any affected party, person, or attorney, and after opportunity for hearing," may impose a sanction "against anyone engaging in conduct that is a misuse of the discovery process." (*Id.*, subd. (b).) Among the authorized sanctions, a court may require the deponent to pay reasonable expenses, including attorney fees (*id.*, subd. (b)(1)); it may also impose an issue sanction (*id.*, subd. (b)(2)), or an evidence sanction, prohibiting the offending party from introducing designated matters in evidence (*id.*, subd. (b)(3).) In the extreme case, it may also impose a terminating sanction. (*Id.*, subd. (b)(4).)

## III.

In this matter, Grayson refused at his videotaped deposition to diagram his position in relation to the radial arm saw that caused his injury; he also refused to demonstrate, using the saw, how the injury occurred. His only grounds were that he had no obligation to do so at an "oral deposition" and

---

proof that the picture is an accurate reproduction of the scene or event which it depicts, and in the opportunity for cross-examination of the witnesses making such proof." (*People v. Dabb, supra,* 32 Cal.2d at p. 498.) Several recent articles have discussed the admissibility of videotaped evidence at trial. (See Note, *Roll Tape—Admissibility of Videotape Evidence in the Courtroom* (1996) 26 U. Mem. L.Rev. 1445, 1452 ["The video's use to depict reenactments of crimes and accidents is considered one of the most powerful uses of videotape evidence. . . . [T]he video reconstruction or reenactment is among the most difficult to get admitted into evidence . . . ."]; Comment, *Truth, Lies, and Videotape: Are Current Federal Rules of Evidence Adequate?* (1992) 21 Sw. U. L.Rev. 1199, 1205-1214).]

that it would deprive him of the advantage of "surprise" if he performed a reenactment at trial.

The record indicates that the superior court denied Emerson's motion to compel only reluctantly, in deference to the then controlling authority of *Stermer* v. *Superior Court, supra,* 20 Cal.App.4th 777. Because *Stermer* is disapproved for the reasons stated herein, the matter must be remanded to the superior court for a new hearing, so that it may exercise its discretion and make such further order as is appropriate.

For these reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—At issue in this case is whether a witness at a deposition may be compelled to reenact an event relevant to the litigation. The majority holds that a deposition witness who refuses to reenact an event "fails to answer any question" (Code Civ. Proc., § 2025, subd. (o)) and therefore may be compelled to perform the reenactment.

I disagree. The Legislature has specified in detail the procedures by which parties to a lawsuit may seek discovery, yet has made no provision for compelling deposition witnesses to reenact events. Unlike the majority, I would not upset the Legislature's careful balancing of interests in the field of civil discovery by judicially creating a new discovery procedure compelling deposition witnesses to perform reenactments.

I

Plaintiff was injured while using a radial arm saw manufactured by defendant Emerson Electric Co. and sold by defendant Sears, Roebuck & Co. (hereafter collectively defendants). Plaintiff sued defendants and others claiming they were legally responsible for his injuries. At plaintiff's video-taped deposition, defendants' counsel asked plaintiff's counsel whether he would allow plaintiff to reenact the accident; plaintiff's counsel replied he would not. Defendants then moved the trial court for an order precluding plaintiff from introducing at trial any "nonverbal testimony demonstrating the circumstances of the accident" or, in the alternative, for an order under subdivision (o) of Code of Civil Procedure 2025 compelling plaintiff at his deposition to reenact the accident. (Unattributed statutory references hereafter are to the Code of Civil Procedure.)

The trial court denied the order, relying on *Stermer* v. *Superior Court* (1993) 20 Cal.App.4th 777 [24 Cal.Rptr.2d 577], which held that the discovery statutes do not authorize a court to compel a deponent to perform a

reenactment. Defendants petitioned the Court of Appeal for a writ of mandate. The Court of Appeal granted the writ, disagreeing with *Stermer* and holding that a deposition witness can be compelled to reenact an event. It directed the trial court to reconsider the matter and to exercise its discretion to decide whether to compel plaintiff to reenact the accident. Plaintiff petitioned this court for review.

## II

Nowhere in California's detailed statutes addressing discovery and depositions has the Legislature explicitly authorized a party to compel a deposition witness to reenact an event. Subdivision (o) of section 2025 does provide that a party taking a deposition may seek an order "compelling [an] answer" if a "deponent fails to answer any question." The majority holds that by using the phrase "answer any question" in subdivision (o) the Legislature implicitly intended to authorize a trial court to compel a deposition witness to reenact an event.

In my view, the ordinary understanding of the phrase "fails to answer any question," considered in its statutory context, does not encompass the refusal to reenact an event. Such is the conclusion as well not only of the Court of Appeal in *Stermer* v. *Superior Court*, *supra*, 20 Cal.App.4th 777, but also of the authors of a prominent civil procedure practice treatise (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 2 (The Rutter Group 1997) ¶ 8:708.1, pp. 8E-82.2 to 8E-82.3).

It would be an exceedingly strange locution to describe the refusal of someone to perform a requested physical action as the "fail[ure] to answer [a] question." The following hypothetical conversation illustrates the implausibility of this construction. A: "I asked her to show me how she had picked up the ball." B: "Did she?" A: "No. She failed to answer my question." Instead, in the context of subdivision (o) of section 2025, the meaning an ordinary reader would ascribe to the term "answer" in the phrase "fail to answer any question" is the dictionary's first definition: "to speak or write in reply . . . ." (Webster's New Internat. Dict. (3d ed. 1961) p. 90, [definition 1a].) By contrast, the usage of "answer" to describe a physical action rather than a verbal response, the meaning the majority prefers, usually occurs in the absence of any question, such as in, "The Boston Tea Party was the colonists' answer to the British tea tax." The statute here, however, links "answer" to "question," asking whether the deponent has "fail[ed] to answer any question." The usual meaning of the phrase "answer [a] question" is narrower than the range of meanings of the term "answer" alone. When one thinks of answers to questions, one thinks of verbal (that is, oral or written) responses, not physical actions.

Moreover, a request to reenact an event is ordinarily phrased as a command punctuated with a period (e.g., "Show us how you were using the saw at the time of injury."), not as a question punctuated with a question mark. If there has been no question, there can be no failure to answer a question. If the request is phrased as a question (e.g., "Would you show us how you were using the saw at the time of the injury?") and the deponent answers "no," there also has been no failure to answer.

Even if one were to conclude, as the majority implicitly does, that considered in isolation the statutory phrase "fails to answer any question" is ambiguous and may mean either the failure to give a verbal response or the failure to perform a requested physical action, any potential ambiguity vanishes when the phrase is considered in the context of the statutory scheme governing depositions and the legislative history of subdivision (o) of section 2025. Those statutes and legislative history demonstrate the Legislature's understanding of depositions as a procedure in which witnesses give verbal statements; they strongly support the conclusion that a deponent can be compelled only to give verbal responses to questions.

Section 2025 itself authorizes only "oral" depositions: "Any party may obtain discovery within the scope delimited by Section 2017, and subject to the restrictions set forth in Section 2019, by taking in California the *oral deposition* of any person, including any party to the action." (§ 2025, subd. (a), italics added; see also *id.* at subd. (c).) In addition, sections 2020, 2026, and 2027 all describe section 2025 as authorizing "oral" depositions. The word "oral" refers in the most literal way possible to a verbal response spoken by the witness: one issuing from the witness's mouth. The Legislature's use of the word "oral" as a limitation on the word "deposition" in section 2025 is strong evidence that the Legislature intended to require of deponents only that they give verbal responses to questions.

Other statutes further reinforce this conclusion. Our statutes describe the response given by a deposition witness as a "statement," a "declaration," and "testimony." (§§ 17, 1878, 2002, 2004, 2025, subd. (*l*).) These provisions reflect the Legislature's understanding that a deponent's obligation is only to provide a verbal response to questions. Section 17, for example, defines the term "depose" as embracing every written "statement," a term describing a verbal response.[1] (Accord, Civ. Code, § 14 [same definition].) Section 1878 defines a deposition witness as a person who makes a "declaration," another

---

[1] "[E]very mode of oral statement, under oath or affirmation, is embraced by the term 'testify,' and every written one in the term 'depose.'" (§ 17.) An oral deposition results in a written statement, of course, when the court reporter transcribes the witness's oral statements into writing.

term encompassing only a verbal response.[2] Section 2004 defines a deposition as a "written declaration" as well.[3] Section 2002 describes a deposition as a form of "testimony," another term describing a verbal response (section 17 in turn defines the term "testify" as the uttering of a "statement").[4] Likewise, subdivision (*l*) of section 2025, the provision authorizing the videotaping of depositions, describes the deponent as giving "testimony," another word describing a verbal response, as well as providing that the deponent's "*testimony*" may be recorded by videotape.[5] (Italics added.)

The legislative history of subdivision (o) of section 2025 further supports the view that the Legislature intended the term "fails to answer any question" only to mean the failure to give a verbal response, and not the failure to perform a requested physical action. Subdivision (o) is in large measure a continuation of former section 2034, the predecessor provision for sanctioning a deponent for failing to answer a question that was enacted as part of the 1957 Civil Discovery Act. Subdivision (a) of former section 2034 used the identical term "answer any question" to describe the conduct subjecting a deponent to sanction: "If a party or other deponent refuses to *answer any question* propounded upon examination during the taking of a deposition, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. . . . [S]uch proponent . . . may apply to the court . . . for an order compelling an answer. . . ." (Stats. 1957, ch. 1904, § 3, p. 3334, italics added.)

Nothing in the 1957 Civil Discovery Act evidences any intent by the Legislature to use the phrase "answer any question" in former section 2034 to authorize courts to compel a deponent to reenact an event. The 1957 Civil Discovery Act included a provision (former section 2019) that, like present section 2025, defined a deposition as an "oral examination." At the time of former section 2034's enactment, the definitions of sections 17, 1878, 2002, and 2004 quoted above, which refer to the verbal nature of a deponent's responses, were already law, having been enacted originally as part of the 1872 Code of Civil Procedure. In addition, the deposition procedure statute that preceded the 1957 Civil Discovery Act confirms that in 1957 the common understanding of a deposition was a series of questions followed by

---

[2] "A witness is a person whose declaration under oath is received as evidence for any purpose, whether such declaration be made on oral examination, or by deposition or affidavit." (§ 1878.)

[3] "A deposition is a written declaration, under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine." (§ 2004.)

[4] "The testimony of witnesses is taken in three modes: [¶] 1. By affidavit; [¶] 2. By deposition; [¶] 3. By oral examination." (§ 2002.)

[5] "[T]he testimony . . . shall be taken stenographically. The party noticing the deposition may also record the testimony by audiotape or videotape . . . ." (§ 2025, subd. (*l*)(1).)

verbal responses: "Depositions must be taken in the form of question and answer. The words of the witness must be written down, in the presence of the witness . . . ." (Former § 2006, enacted in 1872 and repealed by Stats. 1957, ch. 1904, § 1, p. 3321.) Nor does it appear that any case law or commentary regarding the 1957 Civil Discovery Act took the position that reenactments could be compelled under former section 2034, or that a deposition consisted of anything but the questions posed and the verbal responses of the deponent. (See, e.g., 2 DeMeo & DeMeo, Cal. Deposition and Discovery Practice (1986 ed.) ¶ 5.01(2), p. 5.01-3 [discussing 1957 Civil Discovery Act: "A deposition is a written declaration, under oath . . . . [¶] ' "The term 'deposition' is now confined in meaning to testimony delivered in writing; testimony which in legal contemplation does not exist apart from a writing made or adopted by the witness." ' " (Quoting *People* v. *Hjelm* (1964) 224 Cal.App.2d 649, 655 [37 Cal.Rptr. 36]).]; accord, *Voorheis* v. *Hawthorne-Michaels Co.* (1957) 151 Cal.App.2d 688, 692 [312 P.2d 51] ["In practice the witness usually does not write out the statements but testifies before a commissioner authorized by the court to receive and transmit [the testimony] and to act as transcriber of the oral utterance."].)

There is no evidence that, in continuing to use the phrase "answer any question" in subdivision (o) of section 2025 in the 1986 Civil Discovery Act, the Legislature intended the phrase to have any different meaning than it had in former section 2034 in the 1957 Civil Discovery Act. The 1986 Civil Discovery Act was initially drafted by a Joint Commission on Discovery appointed by the State Bar and the Judicial Council. The notes to subdivision (o) by the Reporter of the Joint Commission focus exclusively on changes to the procedures for seeking sanctions for the failure to answer a question and suggest no purpose to expand the meaning of the preexisting phrase "answer any question." (State Bar/Judicial Council Joint Commission on Discovery, Proposed California Civil Discovery Act of 1986, and Reporter's Notes, reprinted in 2 Hogan & Weber, Cal. Civil Discovery (1997) appen. C, p. 404.)

Both the 1957 Civil Discovery Act and the 1986 Civil Discovery Act continue the Legislature's practice of acting explicitly and with detail in defining the procedures for particular discovery methods, and for depositions in particular. (See, e.g., former §§ 2006, 2020-2021, 2023-2026, 2031-2032, and 2036-2038, all repealed by Stats. 1957, ch. 1904, § 1, p. 3321 [statutes governing depositions before enactment of the 1957 Civil Discovery Act].) In light of this history, it would have been extraordinary for the Legislature in the 1986 Civil Discovery Act to have created a duty to perform reenactments merely by attaching a new and unspoken implication to the recycled statutory phrase "answer any question."

Finally, there is a larger policy reason why this court should refrain from imposing discovery obligations that the Legislature has not explicitly set forth in the rules governing discovery procedure. Because discovery is a largely self-executing enterprise, in which the parties are expected to, and do, resolve most of their differences without judicial involvement, it is important that the rules governing it be clear. Uncertainty as to the rules increases the likelihood that the parties will be unable to resolve discovery disputes without the trial court's intervention. Although it is important that discovery rules be clear, the normal method for the clarification of statutes and rules—appellate litigation—is less available than usual. Discovery issues comprise an important part of the trial courts' business, and yet by their nature are rarely litigated on appeal. By the time of appeal, most discovery issues are moot; those that are not rarely amount to reversible error. Obtaining interlocutory review of discovery issues by petition for a writ of mandate is equally difficult. (See *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169-170 [84 Cal.Rptr. 718, 465 P.2d 854].)

Because appellate review is less available to perform the role of statutory clarification, certainty is best served if the procedures for discovery are limited to those clearly set forth in the statute. We followed this policy in *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978 [140 Cal.Rptr. 669, 568 P.2d 394], in which we held that depositions could not be videotaped because the Legislature had not expressly authorized videotaping. We followed it again in *Edmiston* v. *Superior Court* (1978) 22 Cal.3d 699 [150 Cal.Rptr. 276, 586 P.2d 590], where we held that a court could not order the videotaping of a medical examination conducted for discovery purposes because the Legislature had not affirmatively authorized such videotaping. (*Id.* at p. 704 ["Videotaping is not affirmatively authorized in this case and, as in *Bailey*, whether it should be 'is a matter for the Legislature to determine.' "].) I would adhere to this policy in this case as well.

### III

The majority reaches a different conclusion than I do, holding instead that a deposition witness may be compelled to reenact events relevant to the litigation. In my view, the hodgepodge of reasons it puts forth in support of that conclusion is not persuasive. I shall address each of these reasons in turn.

The majority relies on a possible meaning of "answer" it finds in a dictionary: "to act in response to a *request*." (Webster's New Internat. Dict., *supra*, p. 90, italics added [definition 5].) The majority ignores that the statutory phrase we are construing is "answer any *question*" (§ 2025, subd.

(o), not "answer any request." As discussed above, a request is not a question, and the phrase "answer any question" has a narrower meaning than the word "answer" considered in isolation. Moreover, as I have shown, when subdivision (o) is considered together with the rest of section 2025 and the other statutes bearing on depositions and witnesses (§§ 17, 1878, 2002, 2004), it is clear that the Legislature has authorized courts to compel only verbal responses from deposition witnesses.

Subdivision (*l*) of section 2025, on which the majority relies, does not advance the majority's position. Subdivision (*l*) provides in part as follows: "Examination and cross-examination of the deponent shall proceed as permitted at trial under the provisions of the Evidence Code." (§ 2025, subd. (*l*)(1).) There is nothing to suggest that the Legislature intended by this language to authorize compelled reenactments. The words of subdivision (*l*) themselves say nothing about reenactments, nor is there any "provision of the Evidence Code" compelling a witness to perform a reenactment. Instead, the Evidence Code provisions governing the examination and cross-examination of witnesses address such matters as the order of examination and the scope of direct examination, cross-examination, redirect examination, and recross-examination. (Evid. Code, §§ 760-778.) In the absence of any Evidence Code provision providing that a trial witness may be compelled to perform a reenactment, there is no reason to believe that the Legislature understood subdivision (*l*) to implicitly authorize compelled reenactments.

The majority also asserts that our decision in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376-377 [15 Cal.Rptr. 90, 364 P.2d 266] supports its holding. To the contrary, there is no contradiction between *Greyhound* and my conclusion that the Legislature has not authorized compelled reenactments. At issue in *Greyhound* was the scope of a trial court's discretion to deny discovery that was both substantively and procedurally authorized by the discovery statutes; this court held that in deciding whether to exercise its discretion to deny otherwise proper discovery a trial court must act "liberally in favor of disclosure." (*Id.* at p. 377.) Unlike *Greyhound*, at issue here is whether the discovery sought has been procedurally authorized by the Legislature, not whether a court in its discretion should deny discovery that is procedurally authorized.

Whether information is relevant and discoverable in the abstract is a different question from whether the Legislature has authorized the particular procedure a party seeks to use to obtain the information. It is entirely consistent to acknowledge, as we did in *Greyhound Corp.* v. *Superior Court*, *supra*, 56 Cal.2d 355, the broad scope of relevance in discovery and the presumption that a trial court should not ordinarily prohibit procedurally

authorized, relevant discovery, and yet require parties to comply closely with the procedures established by the Legislature for obtaining relevant information. We drew this distinction in *Bailey* v. *Superior Court, supra,* 19 Cal.3d 970, and *Edmiston* v. *Superior Court, supra,* 22 Cal.3d 699, when we concluded that a trial court could not order the videotaping of depositions or of medical examinations for discovery purposes because, despite the relevance of the information sought, in neither case was videotaping expressly authorized by statute.

The majority also attempts to spin the Senate Judiciary Committee's statement that "[i]n general, the revisions [of the 1986 Civil Discovery Act] would bring California law closer to the discovery provisions of the Federal Rules of Civil Procedure" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 169 (1985-1986 Reg. Sess.) p. 9) into an expression of specific intent by the Legislature to authorize compelled reenactments by deponents. In the majority's view, the Legislature intended by this general and unfocused statement directed at the whole of the 1986 Civil Discovery Act to incorporate wholesale the state of federal law circa 1986 concerning compelled reenactments; in the majority's view also, federal law at that time conclusively authorized compelled reenactments.

This argument ignores the actual text of section 2025, as well as that of the other relevant statutory provisions discussed above. As I have demonstrated, those provisions make clear that a deponent need only provide verbal responses. In addition, as noted above, the phrase "answer any question" of subdivision (o) of section 2025 had its origin in former section 2034 of the 1957 Civil Discovery Act and was retained unchanged in the 1986 Civil Discovery Act. Therefore, it was not one of "the *revisions* . . . bring[ing] California law closer to the discovery provisions of the Federal Rules of Civil Procedure" (italics added), and the duty imposed by the phrase on deponents remains unchanged as well.

Even considered in isolation, however, the majority's reliance on the Senate Judiciary Committee's statement is misplaced, for the statement cannot bear the weight the majority puts on it. The sentence immediately following the statement relied on by the majority specifically refers to depositions. It reads: "Several discovery tools—interrogatories, *depositions,* and requests for admissions—would be *sharply limited.*" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 169 (1985-1986 Reg. Sess.) p. 9, italics added.) The majority suggests that a legislator, reading the committee's vague statement about bringing California law "closer" to federal law followed by its statement that the bill would "sharply limit" depositions, would have concluded that the bill would *expand* depositions by silently

adopting federal law governing compelled reenactments while continuing to use unchanged the preexisting phrase "answer any question" from the 1957 Discovery Act. This suggestion is farfetched, to say the least.

Nor in any event was it a settled question at the time whether under federal law deponents could be compelled to perform reenactments. Nothing in the Federal Rules of Civil Procedure expressly authorized compelling deponents to perform reenactments. When our Legislature enacted the 1986 Civil Discovery Act, only two federal trial courts had addressed whether a deponent could be compelled to perform a reenactment; both courts were outside California and one of these decisions was by a federal magistrate. (*Roberts* v. *Homelite Div. of Textron, Inc.* (N.D.Ind. 1986) 109 F.R.D. 664, 668 [concluding that deponent could be compelled to reenact event]; *Carson* v. *Burlington Northern Inc.* (D.Neb. 1971) 52 F.R.D. 492, 493 [same].) No federal appellate court had decided the question, and to this day none has. The notion that anyone in the Legislature even knew of these two federal trial court decisions is questionable; the notion that anyone in the Legislature considered the matter a settled question of federal law *and* considered the Senate Judiciary Committee's vague and general statement about bringing California law "closer" to federal law to have the effect of adopting federal law as the rule of decision for California courts on this narrow issue is even harder to accept.

The majority also seeks support for its holding in the Legislature's action in 1980 to authorize, in former section 2019, recording depositions on videotape. (Stats. 1980, ch. 970, § 1, p. 3074.) That provision does not assist the majority, for the Legislature's purpose in permitting the videotaping of depositions was not to authorize compelled reenactments but only to expand the methods of recording depositions in response to our decision in *Bailey* v. *Superior Court, supra,* 19 Cal.3d 970. (See Assem. Com. on Judiciary, Digest of Assem. Bill No. 2473 (1979-1980 Reg. Sess.) p. 2 [noting that bill would respond to *Bailey* by expressly authorizing recording depositions by videotape]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2473 (1979-1980 Reg. Sess.) p. 2 [same].) *Bailey* only decided that there was no statutory authority for recording depositions by videotape, and did not address whether a deponent could be compelled to reenact an event. Thus, the Legislature's expansion of the authorized methods of deposition recording in response to *Bailey* does not suggest that the Legislature also intended to authorize compelled reenactments.

The legislative history of the 1980 enactment also makes clear that it was intended only to provide an alternative method for recording depositions, and does not suggest that the provision was intended to expand the scope of

a deponent's obligations by authorizing compelled reenactments. The Senate Judiciary Committee analysis states: "This bill would provide that a party could, in addition to having the deposition transcribed, videotape it . . . . [¶] The purpose of this bill is to permit an additional method of preserving and presenting evidence taken at depositions." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2473 (1979-1980 Reg. Sess.) p. 1.) The Assembly Judiciary Committee described the bill as follows: "This bill is intended to permit an additional method of preserving and presenting evidence taken at depositions." (Assem. Com. on Judiciary, Digest of Assem. Bill No. 2473 (1979-1980 Reg. Sess.) p. 1.) "The bill's supporters state that the judicial system should have complete access to technological improvements that would enhance the fact-finding process and they cite video tape systems which permit the recording of both the spoken word and the gestures and demeanor of witnesses as an example of such improvements." (*Id.* at p. 2.) The reference to recording the "gestures and demeanor of witnesses" refers to recording the familiar visual clues to credibility that a witness presents while testifying verbally, not to reenactments. (See, e.g., *Anderson* v. *City of Bessemer City* (1985) 470 U.S. 564, 575 [105 S.Ct. 1504, 1512, 84 L.Ed.2d 518] [noting "the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"]; *Dyer* v. *MacDougall* (2d Cir. 1952) 201 F.2d 265, 268-269 (maj. opn. of L. Hand, J.) ["[T]he carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness."].)

Finally, my conclusion that the Legislature has not permitted parties to compel deponents to reenact events at depositions would not lead to unfairness in litigation. Deponents would be free to voluntarily perform such reenactments. In addition, my conclusion does not authorize a party who seeks to present a reenactment to spring it by surprise at trial. As the Court of Appeal noted here, trial courts have ample authority to condition the admission of reenactments, like the admission of other forms of demonstrative evidence, upon adequate pretrial disclosure of the contents of the reenactment, including an opportunity to videotape the reenactment. (See *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272, 287-289 [245 Cal.Rptr. 873] [courts have inherent power to exclude evidence to preserve integrity and fairness of judicial proceedings].)

In sum, the majority fails to show that the Legislature has authorized courts to compel deposition witnesses to perform reenactments. Nor does the

majority acknowledge the policy considerations that weigh against its position. The majority's discussion of the advantages of compelled reenactments discounts too much the potential compelled reenactments have for presenting a witness in a misleading light. In verbal testimony, a witness can make clear what he or she does or does not remember concerning an event. In reenacting an event, there is no easy way to present this, for a witness performing a reenactment impliedly asserts that he or she remembers the continuous sequence of his or her own relative location and movements as well as those of other persons and objects. It seems doubtful that most persons possess the detailed kinesthetic memory of body positions that a reenactment implies, and it is easier than the majority acknowledges to make a witness who has a clear and accurate memory of the series of crucial moments of an event to appear unconvincing because he or she cannot link up the memories of those moments by physically demonstrating what occurred in between those moments. In addition, a reenactment at trial can be closely controlled by the presiding judge to prevent harassment or abuse of the witness; because depositions are conducted outside the presence of a judge (typically in a lawyer's office), a compelled reenactment at a deposition presents a greater potential for abuse and harassment than one at trial. In any event, however the advantages and disadvantages may be weighed, the important point is that whether to require witnesses to perform reenactments and other demonstrations is the sort of policy judgment that the Legislature has given very detailed consideration to in other aspects of the discovery statutes. It should be free to do so in this case as well.

## IV

For the reasons stated above, I dissent, and would reverse the judgment of the Court of Appeal.