Filed 5/14/24  Kaur v. Pabla CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASWINDER KAUR et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>GURIT PABLA et al.,<br><br>Defendants and Respondents. | F086273<br><br>(Merced Super. Ct.<br>No. 20CV-03476)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian McCabe, Judge.

HBG Law and Harry B. Gill for Plaintiffs and Appellants.

Fores Macko Johnston & Chartrand, Cory B. Chartrand and Megan D. Johnson for Defendant and Respondent Dual Arch International, Inc.

No appearance on behalf of Defendants and Respondents Gurit Pabla, Gursharan Pabla, Tarjender Pabla, ECP, LP, and BN Capital Management, Inc.

-ooOoo-

This matter stems from a foreclosure sale that was successfully challenged and set aside by appellants Jaswinder Kaur and Parkash Pabla (Pabla) (collectively "Appellants").[1]  In the course of litigation, Appellants also successfully obtained a writ of mandate in which this court granted Appellants their costs on appeal.  The trial court granted some costs but denied Appellants' attempt to obtain attorney fees from respondent Dual Arch International, Inc. ("DAII").  Appellants raise a single issue in this appeal:  Did the trial court err by concluding that there was no basis for Appellants to obtain their attorney fees as part of the costs granted to them in the writ proceeding?  We conclude that the trial court did not err and affirm the court's order.

## FACTUAL BACKGROUND

In January 2009, Pabla's husband Dalip Pabla (Dalip) purchased property located on Burgundy Drive in Livingston, California ("the Property") as his sole and separate property.  The Property was subject to a legitimate and properly recorded deed of trust ("Lawful DOT").

In December 2009, Dalip executed a grant deed in which he and Pabla became joint tenants in the Property.

From June 22, 2013, to August 25, 2013, Pabla visited India.

Apparently on August 2, 2013, a forged promissory note for $60,000 was created ("the Note").[2]  The "Borrowers" on the note are identified as Dalip and Pabla, and the "Lenders" are identified as Gurjit Pabla, Gursharan Pabla, and Tajender Pabla, who are the step-grandchildren of Pabla (collectively "the Step-Grandchildren").  The security for the Note is the Property.  The Note indicates that it will be repaid in full on March 25,

---

[1] Parkash Pabla was married to Dalip Pabla, until Dalip Pabla's death.  Jaswinder Kaur is the daughter of Parkash and Dalip Pabla.

[2] The date the Note was created is unclear.  The Note itself indicates it was created on March 25, 2013.  However, a signature by the notary is dated August 2, 2013. Because the result of this appeal will not change, we will assume that the Note was fraudulently signed on August 2, 2013.

2.

2018, and is signed by both Dalip and Pabla on August 2, 2013. The Note also provides all costs, including "legal costs," incurred by the Lenders in enforcing the Note are to be added to the principal outstanding and be payable immediately by the Borrowers. The Note was notarized by Jarnail Lallria, Tajender Pabla's relative by marriage.

Also apparently created on August 2, 2013, was a forged short form deed of trust ("Short Form").[3] The Short Form identified the "borrower" as Dalip and Pabla, the "lender" as the Step-Grandchildren, the "trustee" as Everhome Mortgage, the "property" as the Property, and the "loan" as $60,000 secured by a promissory note. The Short Form indicates that it was signed by Dalip and Pabla, and notary Jarnail Lallria signed the acknowledgement on August 2, 2013. The Short Form purported to grant a security interest in the Property to the Step-Grandchildren to secure repayment of a $60,000 loan. The Short Form gave the power of sale to the trustee in the event that the borrower failed to perform and pay as required by the Note. The Short Form incorporated by reference paragraphs I through Q, and sections 1 through 25 of a document identified as the "Fictitious Deed of Trust" (Fictitious DOT). The Short Form specifically defined the Fictitious DOT as "that certain Fictitious Deed of Trust recorded in the in the Office of the Recorder on January 21, 2009, in Book/Volume 38, beginning at Page 47, for land situate in the county of Merced."

In October 2014, Dalip through an executed grant deed transferred the Property to Pabla as her separate property.

On June 17, 2016, Gurjit Pabla recorded the Short Form with the Merced County Clerk.

---

[3] Like the Note, the date the Short Form was created is unclear. The body of the Short Form states that it is dated March 25, 2013, but the notary's signature states that the Borrowers and Lenders appeared before him to sign on August 2, 2013. Because the result of this appeal will not change, we will assume that the Short Form was fraudulently signed on August 2, 2013.

On July 31, 2020, the Step-Grandchildren filed with the Merced County Recorder a substitution of trustee in which DAII was substituted in place of Everhome Mortgage on the Short Form. The same day, DAII filed with the Merced County Record a notice of default and election to sell.

On November 9, 2020, DAII recorded a notice of trustee's sale.

On December 9, 2020, DAII conducted a nonjudicial foreclosure sale and sold the Property to defendant ECP.

On January 5, 2021, DAII filed with the Merced County Recorder the trustee's deed upon sale.

## PROCEDURAL BACKGROUND

Appellants filed a complaint in December 2020.

As part of DAII's answer to Appellants' third amended complaint, DAII generally prayed to recover reasonable attorney fees but alleged no basis for an award of attorney fees.

On September 22, 2022, Appellants filed a motion for trial preference under Code of Civil Procedure 36 (section 36).

On October 19, 2022, DAII filed a conditional non-opposition to Appellant's section 36 motion. DAII conditionally objected to setting the trial within 120 days of granting the motion because of the state of discovery.

On November 7, 2022, the trial court granted Appellant's section 36 motion. However, contrary to the terms of section 36, the court set a trial date for November 7, 2023, which was more than 120 days from the date the motion was granted.

On December 29, 2022, Appellants filed in this court a petition for a writ of mandate that challenged the trial court setting a trial date more than 120 days from the granting of the section 36 motion.

On January 5, 2023, DAII filed an unsolicited preliminary opposition to Appellants' writ petition.

4.

On January 6, 2023, our court ordered DAII to file a further opposition.

On January 13, 2023, DAII filed an opposition to Appellant's writ petition.

On January 19, 2023, our court granted Appellant's writ petition. The trial court was ordered to set a trial date within 120 days of the order granting Appellant's section 36 motion. The order granted Appellants their costs on appeal in accordance with California Rules of Court, rule 8.493(a)(1)(A).

On February 1, 2023, this court issued the remittitur on the writ proceeding.

Following remittitur, trial was eventually set for March 14, 2023.

On March 13, 2023, Appellants filed a memorandum of costs, which sought among other things $31,680 in attorney fees for successfully pursuing the writ of mandate.

On March 14, 2023, trial began. Although not clear from the record provided, there appears to be no dispute that prior to or around the time of trial, the following occurred: defaults were taken against the Step-Grandchildren, the Short Form and Note were determined to be forged and void, the trustee's sale was set aside, title was quieted in favor of Appellants, and DAII prevailed on the Appellants' claims against it as a result of a granted motion for nonsuit.

On March 21, 2023, DAII filed a motion to tax costs. Among other things, DAII argued that no statute, contract, or law authorized attorney fees in this case and Appellants did not file a timely motion for attorney fees.

On April 12, 2023, Appellants filed an opposition to DAII's motion to tax costs. In part, the opposition argued that the Note authorized an award of attorney fees.

On April 18, 2023, DAII filed a reply in support of its motion to tax costs. Among other things, DAII reargued that it was not a party to the Note, that the Fictitious DOT that was incorporated into the Short Form did not exist, the prayer for relief was not a basis for fees, and that a motion for fees would be untimely.

5.

On April 25, 2023, the trial court issued a tentative ruling on the motion to tax costs. The tentative ruling awarded Appellants their $775 appellate filing fee but denied the request for attorney fees. In relevant part, the tentative ruling read: "Attorneys' fees claimed (Item 9) are not provided for by statute or contract and are therefore not permissible costs."

The trial court issued a minute order that adopted its tentative ruling on May 9, 2023. The minute order noted that no party had requested oral argument with respect to the tentative ruling.

On May 11, 2023, Appellant filed a notice of appeal.

## DISCUSSION

### I. Appealability of the Cost Order

#### A. *Parties' Arguments*

Appellants argue that rulings on a motion to tax costs are ordinarily appealable under Code of Civil Procedure section 904.1, subdivision (a)(2) as orders after a final judgment. DAII argues that there has yet to be a final order entered by the trial court, meaning that the order denying attorney fees is an interim nonappealable order and Appellants' appeal should be dismissed.

#### B. *Discussion*

" 'An attempt to appeal from a nonappealable order does not give [an appellate] court jurisdiction or authority to review it.' " (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1022.) Thus, the existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; see *Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1105.) Further, an order denying attorney fees that is made prior to entry of judgment (an interim order) is generally considered nonappealable. (*Sese v. Wells Fargo Bank N.A.* (2016) 2 Cal.App.5th 710, 718–719 (*Sese*).)

6.

In this case, the order appealed is an order concerning costs on appeal, including attorney fees incurred in prosecuting the appeal. Unlike *Sese*, Appellants did not seek an award of attorney fees for conduct occurring solely within the trial court. (Cf. *Sese*, *supra*, 2 Cal.App.5th at pp. 717–719 [holding that the denial of an interim motion for attorney fees under Civ. Code, § 2924.12 while trial court proceedings remained ongoing was not an appealable order].) Since the order involves fees and costs for prosecuting an appeal and does not involve an interim fee motion for conduct occurring in the trial court, this case is not controlled by *Sese*.

Although *Sese* does not apply to this matter, there is a split of authority on the question of whether a cost award based on an appeal is an appealable order. One court has held that such an order is not sufficiently final to be considered an appealable order. (*Barnes v. Litton Systems, Inc.* (1994) 28 Cal.App.4th 681, 684–685.) Other courts hold that, even if there is not a final judgment at the trial court level, the trial court's order on a motion for costs from an appeal is sufficiently final to be an appealable order. (See *Monson v. Fischer* (1933) 219 Cal. 290, 291 (*Monson*); *Rostack Investments, Inc. v. Sabella* (2019) 32 Cal.App.5th 70, 79–80 (*Rostack*); *Krikorian Premier Theatres, LLC v. Westminster Central, LLC* (2011) 193 Cal.App.4th 1075, 1083 (*Krikorian*); *Markart v. Zeimer* (1925) 74 Cal.App. 152, 155–159 (*Markart*).) The rationale of these cases is that a cost order relating to an appeal represents a complete judgment that finds it origin in the appellate court's order, is created when costs are taxed, and will not be affected by further trial court proceedings. (*Krikorian*, at p. 1083; see also *Rostack*, at pp. 79–80.) *Krikorian* and *Rostack* reject *Barnes* as an outlier case that did not analyze relevant authority (such as *Monson* and *Markart*) and that is inconsistent with nearly 100 years of appellate practice. (*Rostack*, at pp. 79–80; *Krikorian*, at pp. 1082–1083.)

We find persuasive the analyses of *Krikorian* and *Rostack* and decline to follow *Barnes*. Under *Krikorian* and *Rostack*, the trial court's order on costs is an appealable order. (*Rostack*, at pp. 79–80; *Krikorian*, at pp. 1082–1083; see also *Monson*, *supra*,

7.

219 Cal. at p. 291; *Markart*, *supra*, 74 Cal.App. at pp. 155–159.) Therefore, we conclude that we have jurisdiction over this appeal. (See *Monson*, at p. 291; *Rostack*, at pp. 79–80; *Krikorian*, at pp. 1082–1083; *Markart*, at pp. 155–159.)

## II. Basis for Attorney Fees

### A. *Parties' Arguments*

Appellants argue in part that they were clearly the prevailing parties in the writ proceeding since they obtained the relief requested, despite DAII's preliminary and ordered oppositions. Appellants argue that attorney fees may be awarded as costs if authorized by contract. Appellants argue that DAII prayed for attorney fees, and those fees could only have been based on clauses within the Note or the Short Form. Appellants argue that DAII's prayer prevents DAII from denying the availability of contractual attorney fees, and Civil Code section 1717's (section 1717) reciprocity provision permits Appellants to utilize the Note's and/or the Short Form's attorney fees clauses. Appellants aver that, through section 1717 and the clauses within the Note and/or the Short Form, the trial court erred by finding no basis to award fees.

DAII responds in part that it is not a party to either the Note or the Short Form. Further, there is no attorney fees clause in the Short Form, and the Fictitious DOT does not exist. Finally, DAII argues that its demurrer did not request attorney fees. Therefore, DAII avers that the trial court correctly concluded that there was no basis to award Appellants attorney fees in connection with the writ proceeding.

We disagree with Appellants' arguments.

### B. *Legal Standard*

"Unless the [appellate] court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them …." (Cal. Rules of Court, rule 8.278(d).) "[L]itigants are ordinarily responsible for paying their own attorney's fees, unless a statute or agreement provides otherwise." (*Travis v. Brand* (2023) 14 Cal.5th 411, 417.) When a statute or an agreement between the parties

provides for the recovery attorney fees, the recovery will include services at trial and on appeal.  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 637; *Wilson v. Wilson* (1960) 54 Cal.2d 264, 272; *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 486.)

If a party sues on a contract that contains an attorney fees provision, by statute the fee provision will be read reciprocally to permit the prevailing party, regardless of whether that party is identified in the contract, to recover attorney fees.  (Civ. Code, § 1717, subd. (a); *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1146; *Travelers Indemnity Co. v. Lara* (2022) 84 Cal.App.5th 1119, 1136.)  The reciprocity of attorney fees will apply even if the prevailing party establishes that the contract is inapplicable, invalid, unenforceable, or nonexistent, so long as the other party would have been entitled to recover attorney fees if it had prevailed.  (*Tract 19051 Homeowners Assn*, at pp. 1146–1147; *Santisas v. Goodin* (1998) 17 Cal.4th 599, 611.)  To obtain fees under section 1717, the party claiming fees must " 'establish that the opposing  party *actually* would have been entitled to receive them if he or she had been the prevailing party.' " (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 899, fn. omitted (*Blickman Turkus*) [quoting *Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1306 (*Leach*)].)

The issue of a party's entitlement to attorney fees is a legal issue which is subject to de novo review.  (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175–1176; *Leiper v. Gallegos* (2021) 69 Cal.App.5th 284, 291.)  The party seeking fees and costs has the burden of establishing entitlement to an award.  (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695; *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)

C.    *Analysis*

Appellants' argument is based on the premise that they are entitled to attorney fees through theories regarding reciprocity.  Specifically, DAII prayed for attorney fees in its

answer,[4] that prayer could only be based on the Note and/or the Short Form, DAII cannot disavow its prayer, and the fee provisions in the Note and/or the Short Form are reciprocal pursuant to section 1717. We find several flaws in Appellants' argument and conclude that Appellants failed to meet their burden of showing entitlement to attorney fees.[5]

### 1. DAII's Prayer for Attorney Fees

In its operative answer, which was an answer to Appellants' third amended complaint, DAII prayed: "That this answering defendant recover its reasonable attorney's fees and expenses incurred by reason of the Complaint herein." DAII's answer contained no other allegations or references to attorney fees. More importantly, the answer does not identify any ground or basis that would actually support attorney fees. The answer does not allege that DAII is entitled to attorney fees pursuant to a contractual agreement in general or pursuant to the Note or the Short Form in particular. Rather, DAII's answer is a general request for attorney fees that creates only speculation as to its basis. Therefore, the answer does not show that DAII's prayer for attorney fees was based either on the Note or the Short Form.

Appellants argue that Code of Civil Procedure section 580 (section 580) makes DAII's prayer for attorney fees reciprocal. Appellants do not actually cite which part of section 580 provides for a reciprocal recovery, do not explain how section 580 would support an award of attorney fees based solely on DAII's prayer for attorney fees, or cite

---

[4] Appellants also argue before us (as they did to the trial court) that DAII requested attorney fees in its demurrer. This is incorrect. The demurrer filed by DAII and provided to us contains no request for attorney fees. Appellants' assertion to the contrary is improper.

[5] Appellants' opening brief states in part that attorney fees are authorized by the "national form." However, Appellants do not mention the "national form" again. As such, we find that any arguments based on the "national form" are inadequately developed and thus, waived. (See *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

10.

any authority in support of their position. Our own review of section 580 reveals that this section addresses: (1) relief to a plaintiff in the event no answer was filed; (2) relief to the plaintiff that is consistent with the complaint's case and embraced within the issues raised by the complaint; and (3) the issue of liability being imposed through either legal or equitable principles. (Code Civ. Proc., § 580, subd. (a).) Awards of attorney fees are not mentioned in section 580, nor does section 580 contain reciprocity provisions in general or with respect to the allegations or requests of a defendant's answer specifically. Given the plain language of section 580, as well as the absence of any authority cited in support of Appellants' position, Appellants have failed to demonstrate that section 580 aids them. (Cf. *In re Tobacco Cases II*, *supra*, 240 Cal.App.4th at p. 808 [noting that arguments that are inadequately developed and supported by citation to relevant authority may be disregarded and treated as waived]; *City of Santa Maria v. Adam*, *supra*, 211 Cal.App.4th at p. 287 [same]; *Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956 [same].)

Appellants also invokes Evidence Code section 623 (section 623), which reads: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Appellants do not adequately explain how section 623 has any application to this case. Section 623 is the statutory embodiment of equitable estoppel. (See *Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.) A party seeking to utilize equitable estoppel must demonstrate that he detrimentally relied on the statements or conduct of the defendant to his injury. (See Evid. Code, § 623; *Honeywell*, at p. 37.) Here, there is no indication or suggestion that Appellants were led to believe by the words or actions of DAII that DAII was relying on the Note and/or the Short Form to obtain attorney fees, let alone any indication that Appellants were somehow injured because of such statements or conduct. Indeed, the only statement of DAII identified by Appellants is the general prayer for

11.

attorney fees, which was made in answer to Appellant's third amended complaint. Significantly, Appellants themselves prayed for attorney fees in the third amended complaint. Since Appellants prayed for attorney fees *before* DAII did so, it is unknown how there could possibly be any form of detrimental reliance by Appellants. (Cf. *Blickman Turkus, supra*, 162 Cal.App.4th at p. 898 ["Merely praying for relief to which one is not entitled cannot ordinarily engender either reliance or detriment"].) Therefore, Appellants have failed to demonstrate that section 623 aids them.[6]

Finally, to the extent that Appellants argue that some form of judicial estoppel should apply to DAII's answer and prevent it from denying that contractual attorney fees are available, such an argument is unsupported by case law. One case has concluded that a plaintiff was estopped from denying the availability of attorney fees where the plaintiff prayed for attorney fees in the complaint, attached the contract containing the fee provision to the complaint, and relied on language from the attached contract to request an award of attorney fees in a concluding trial brief. (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1186 (*International Billing Services*).) *International Billing Services* has been criticized and rejected on this point by other courts, including by the same court of appeal that issued *International Billing Services*. (E.g., *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 330–331 (*Hart*); *Blickman Turkus, supra*, 162 Cal.App.4th at pp. 898–899; *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 467–469 (*M. Perez*).) These courts hold that a prayer for attorney fees does not create a judicial estoppel and is alone

---

[6] Appellants also cite *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310. However, page 310 of *Kajima* does not include a citation to section 623. Instead, page 310 contains a discussion of promissory estoppel as an equitable principle that satisfies the element of consideration in order for a promise/contract to be enforced. (*Ibid.*) The prayer for attorney fees in DAII's answer is not a promise, and this case does not involve promissory estoppel. *Kajima* has no application to this case.

an insufficient basis for the opposing party to claim attorney fees. (*Hart*, at p. 331; *Blickman Turkus*, at p. 899; *M. Perez*, at p. 467.)

In this case, *Hart*, *Blickman Turkus*, and *M. Perez* defeat Appellant's argument; DAII's general prayer for attorney fees does not estop DAII or provide a basis for Appellants to claim attorney fees. Further, even if we were to apply *International Billing Services*, Appellants would not prevail. As explained above, DAII made a general prayer for attorney fees and, unlike the plaintiff in *International Billing Services*, it did not attach a copy of any contract to its answer and did not argue that it was entitled to attorney fees based on that contract in other proceedings. (See *Hart*, *supra*, 27 Cal.App.5th at p. 330 [distinguishing *International Billing Services* on the basis that the plaintiff only generally prayed for attorney fees]; cf. *International Billing Services*, *supra*, 84 Cal.App.4th at p. 1186.) Thus, DAII's prayer does not operate as an estoppel to prevent DAII from denying that Appellants have a basis for an attorney fees award.

In sum, DAII's prayer for attorney fees does not form a basis for an award of attorney fees to Appellants under section 1717 or otherwise. (*Hart*, *supra*, 27 Cal.App.5th at pp. 330–331; *Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1188, fn. omitted ["Therefore, [defendants] could not claim the right to attorney fees simply because [plaintiff] had asked for those fees in his complaint"]; *Blickman Turkus*, *supra*, 162 Cal.App.4th at pp. 898–899.)

### 2. The Note[7]

Appellants cite no authority and appear to simply assume that the Note's direction for "legal costs" to be added to the principal of the outstanding balance either encompasses or is synonymous with "attorney fees." However, some cases have used the terms "legal costs" and "attorney fees" to represent separate and distinct concepts. (E.g.

---

[7] Appellants' briefing was ambiguous as to reliance on the Note. Because Appellants' oral argument confirmed they are relying on the Note, we examine whether the Note provides a basis for an award of attorneys' fees against DAII.

*Laird v. Blacker* (1992) 2 Cal.4th 606, 612 [parenthetically describing *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417 as holding "actual damage occurs when plaintiff in underlying action incurs and pays attorney fees, legal costs, and expenditures"]; *People v. Czirban* (2022) 77 Cal.App.5th 1050, 1061 [explaining that the trial court awarded about $46,000 in "attorney fees" and about $1,200 in "legal costs"]; cf. *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 431 [noting that a complaint alleged that the plaintiff had incurred and would incur "attorney fees, legal costs, lost employee time, and other damages .…"].) In the absence of applicable authority or a more developed argument by Appellant, we are not convinced that Appellants' assumption that "legal costs" includes "attorney fees" is correct. (Cf. *In re Tobacco Cases II*, *supra*, 240 Cal.App.4th at p. 808 [noting that arguments that are inadequately developed and supported by citation to relevant authority may be disregarded and treated as waived]; *City of Santa Maria v. Adam*, *supra*, 211 Cal.App.4th at p. 287 [same]; *Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956 [same].)

Nevertheless, even if we assume that "legal costs" includes "attorney fees," we cannot conclude that the Note would serve as a basis for attorney fees against DAII. As discussed above, the fraudulent Note identifies the Lenders as the Step-Grandchildren and the Borrowers as Pabla and Dalip. The Note identifies no other parties, does not make provision for or grant powers to a "trustee" in general, and does not identify DAII in any capacity, and only the "legal costs" of the "Lenders" is identified. The Note does not incorporate any other documents by reference, nor does it appear that any sections of the Note are incorporated by reference into any other documents. Further, Appellants identify no filings or actions by DAII that sufficiently show DAII was attempting to utilize the "legal costs" provision of the Note in order to obtain attorney fees or for any other purpose. Under these circumstances, DAII is a stranger to the Note, and Appellants cite no authority that would make the Note's "legal costs" provision enforceable by or

14.

against DAII.  Therefore, we conclude that the Note cannot serve as the basis for an award of attorney fees against DAII.  (See *Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1682–1683 [holding that an award of attorney fees pursuant to contract was improper where the appellant was not a party to the lease and had not assumed the obligations of the contract]; *Glynn v. Marquette* (1984) 152 Cal.App.3d 277, 280 [holding no contractual basis for attorney fees where the respondent was not a party to the contract at issue and there was no evidence that the respondent had expressly assumed the contractual obligations between a third party and the appellant]; cf. *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 815 [explaining that a defendant could not recover attorney fees through section 1717 where the defendant was not a party to the contract at issue and was not sued for breaching the contract at issue]; *Blickman Turkus, supra,* 162 Cal.App.4th at p. 899; *Leach*, *supra*, 185 Cal.App.3d at p. 1306.)

### 3.     The Short Form

The Short Form contains no express attorney fees provision.  Recognizing this, Appellants contend that the Fictitious DOT referenced in the Short Form is actually the Lawful DOT.  We cannot agree.[8]

---

[8] At oral argument, Appellants' counsel appeared to suggest that "national form" provisions were incorporated into the Short Form and the "national form" includes an attorney's fee provision.  However, Appellants' opening brief contained a single sentence that referenced a "national form."  The brief did not identify what the "national form" is, explain whether the national form was incorporated into the Short Form, identify the specific provision in the "national form" that provides for attorney fees, or otherwise explain how the "national form" actually applies in this case.  Moreover, the Short Form states in relevant part that it "combines uniform covenants for national use … to constitute a uniform security instrument covering real property."  A "covenant" is generally understood as a "formal agreement or promise, usu. in a contract or deed, to do or not do a particular act … ."  (Black's Law Dictionary (11th ed. 2019) "covenant".)  Appellants do not explain whether a different meaning of "covenant" is applicable, or how the ability to recover attorney's fees constitutes a promise to do or not do something with respect to real property.  In short, to the extent that Appellants rely on a theory involving the "national form" to support an award of attorney's fees, the argument is forfeited as inadequately developed.  (*In re Tobacco Cases II*, *supra*, 240 Cal.App.4th at

It is true that the Lawful DOT and the Fictitious DOT appear to share the same recording date, January 21, 2009. Further, the Lawful DOT contains an attorney fee provision with respect to pursuing remedies, including foreclosure. If the Lawful DOT and the Fictitious DOT are one in the same, then the Lawful DOT's attorney fee provision is one of the sections incorporated by reference into the Short Form. However, the Short Form describes the Fictitious DOT not only by date of recordation, but also by identifying the county office and the precise location within that county office's records where the Fictitious DOT is located. Specifically, the Short Form describes the Fictitious DOT as being filed on January 21, 2009, with the Merced County Recorder's Office in Book/Volume 38 at Page 47. We take judicial notice of Book 38 at Page 47 of the Merced County Recorder's Office.[9] (Evid. Code, §§ 452, 459; *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 [taking judicial notice of the contents of records maintained by a county recorder's office].) Page 47 of Book 38 has seven entries. (See https://web2.co.merced.ca.us/RecorderWorksInternet/.) None of those entries are dated January 21, 2009; none of those entries involve a deed of trust or a fictitious deed (they are either maps or surveys); and none of those entries identify Pabla, Dalip, or any of the Step-Grandchildren. (*Ibid.*) In other words, the Fictitious DOT that is identified and incorporated by reference in the Short Form does not exist. This is consistent with allegations in Appellants' third verified complaint in which they alleged that the Fictitious DOT was "non-existent."

Accordingly, Book 38 at Page 47 of the Merced County Recorder's Office demonstrates that the Fictitious DOT described in the Short Form is not the Lawful DOT. Book 38 at Page 47 also demonstrates that the Fictitious DOT identified in the Short

---

p. 808; *City of Santa Maria v. Adam*, *supra*, 211 Cal.App.4th at p. 287; *Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

[9] Pursuant to Evidence Code sections 455 and 459, we gave the parties notice of, and opportunity to object to, our intention to take judicial notice of this Book 38 at Page 47. No party filed objections.

Form does not actually exist. Because the Fictitious DOT does not exist, the Fictitious DOT's terms are unknown; there are no provisions or definitions of the Fictitious DOT that can be incorporated into the Short Form by reference, including provisions for attorney fees. Therefore, the Short Form does not contain an attorney fees provision and cannot serve as the basis for an award of attorney fees in this case.[10] (*M. Perez*, *supra*, 111 Cal.App.4th at p. 466 ["If a party claims a contractual right to attorney fees, but the contract does not contain such a provision, that party will not be able to recover attorney fees, even if it prevails in the litigation"].)

## DISPOSITION

The costs order of the trial court is affirmed. Respondent is awarded its costs on appeal.

POOCHIGIAN, Acting P. J.

WE CONCUR:

FRANSON, J.

SNAUFFER, J.

---

[10] Without citation to the record, Appellants contend that the trial court held that no attorney fees existed because the Short Form was void *ab initio*. However, the court's costs order does not reflect this rationale, it merely states that there was no contractual or statutory basis for an award of attorney fees. Further, while a findings and order after hearing does indicate that the Short Form was fraudulent and void, thereby voiding DAII's foreclosure sale, the order does not address attorney fees or specific clauses in the Short Form. Therefore, we cannot accept Appellant's characterization of the court's rationale.